**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

Jane Doe M.O.,

|  |  |  |
|---|---|---|
| Plaintiff, | | Case No. 2:25-cv-517 |
| Vs. | | |

Sai Shyam Hotels LLC d/b/a Motel 6 Fort Myers; Tiger Fort Myers Northeast LLC d/b/a WoodSpring Suites; Shivam Sundaram Hotels LLC d/b/a Red Roof Inn; Six Continents Hotels, Inc. ("SCH"), a company within the InterContinental Hotels Group d/b/a Candlewood Suites; Choice Hotels International Inc. d/b/a Comfort Inn & Suites Naples a/k/a Comfort Inn-Executive; and DOES Johns,

COMPLAINT FOR DAMAGES AND JURY TRIAL

Defendants.

_____/

## <u>COMPLAINT</u>

**COMES NOW**, Jane Doe M.O. ("Plaintiff"), by and through her undersigned counsel, files this verified complaint for damages and jury demand against Defendants Sai Shyam Hotels LLC d/b/a Motel 6 Fort Myers; Tiger Fort Myers Northeast LLC d/b/a WoodSpring Suites; Shivam Sundaram Hotels LLC d/b/a Red Roof Inn; Six Continents Hotels, Inc. ("SCH"), a company within the InterContinental Hotels Group d/b/a Candlewood Suites; Choice Hotels International Inc. d/b/a Comfort Inn & Suites Naples a/k/a Comfort Inn-

Executive; and DOES Johns, (collectively "Defendants") makes the following averments:

## PARTIES

1.      Plaintiff Jane Doe M.O. is a natural person and resident of Collier County, Florida. Plaintiff is a survivor of sex trafficking, over the age of majority, and otherwise *sui juris*.

2.      Defendant Sai Shyam Hotels LLC is a Florida Limited Liability Company, doing business as Motel 6 Fort Myers ("Motel 6"), located at 3350 Marinatown Lane, Fort Myers, Florida 33903, and can be served with this complaint via its registered agent Patel Sandip located at B 6510 N US Hwy 301 Tampa, FL 33610.

3.      Defendant Tiger Fort Myers Northeast LLC, is a Florida Foreign Limited Liability Company, doing business as WoodSpring Suites ("WoodSpring"), located at 9701 Orange River Blvd Fort Myers, Florida 33905-2747, and can be served with this complaint via its registered agent NRAI Services, Inc. located at 1200 South Pine Island Road Plantation, Florida 33324.

4.      Defendant Shivam Sundaram Hotels LLC is a Florida Limited Liability Company, doing business as Red Roof Inn ("Red Roof"), located at 13000 N Cleveland Ave North Fort Myers FL 33903, and can be served with this

complaint via its registered agent Patel, Tarun located at 12859 Chadsford Cir Fort Myers, FL 33913.

5. Defendant Six Continents Hotels, Inc. ("SCH"), a company within the InterContinental Hotels Group (collectively, "IHG® Hotels & Resorts" or "IHG"), doing business as Candlewood Suites ("Candlewood"), located at 3626 Colonial Court, Fort Myers, Florida 33913, and can be served with this complaint via its registered agent United Agent Group Inc. located at 801 US Hwy 1 North Palm Beach, Florida 33408.

6. Defendant Choice Hotels International Inc., is a Florida Foreign Profit Corporation, doing business as Comfort Inn & Suites Naples a/k/a Comfort Inn-Executive ("Comfort"), located at 3860 Tollgate Blvd, Naples, Florida, 34114, and can be served with this complaint via its registered agent United States Corporation Company located at 1201 Hays Street, Suite 105, Tallahassee, Florida, 32301.

7. Defendant DOES Johns are individuals and entities whose identities are presently unknown to Plaintiff and may have also contributed to the acts and omissions alleged herein. Plaintiff reserves the right to amend this Complaint to include additional parties as discovery progresses.

//

//

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 because this action arises in the Constitution, laws, or treaties of the United States, namely, the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. Section 1595. Additionally, this Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. Specifically, the Defendants' misconduct and omissions led to injuries sustained by the Plaintiff within this district. Additionally, the Defendants reside, conduct business, and operate within this district, further establishing proper venue.

10.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves parties that are citizens of different states.

11.     In addition, Plaintiff invokes the supplemental jurisdiction of this Court with respect to claims based on laws of the State of Florida or any other jurisdiction pursuant to 28 U.S.C. Section 1367.

12. Accordingly, this Court has both subject matter jurisdiction and proper venue over this action.

**INTRODUCTION**

13. This is an action for human trafficking, negligence, and severe physical, emotional, and financial harm arising from the Defendants' unlawful actions and omissions in facilitating human trafficking activities and permitting the use of illicit drugs on its premises. Plaintiff was the victim of severe exploitation, coerced into a life of trafficking, abuse, and controlled drug use within the Defendants' premises. Despite being fully aware or negligent of failing to recognize the signs of such criminal activity, the Defendants allowed the trafficking and exploitation to continue unchecked.

14. Plaintiff brings this action pursuant to the civil remedy provision of the TVPRA, 18 U.S.C. § 1595(a), against Defendants for knowingly benefiting from and participating in, a venture that they knew or should have known engaged in sex trafficking of Plaintiff in violation of 18 U.S.C. § 1591(a).

15. From about four years, on or about May 2019 to May 2023, Plaintiff was repeatedly trafficked and subjected to commercial sex acts through force, fraud, and coercion. During this time, she was harbored and exploited within hotel and motel properties operated, managed, franchised, or owned by Defendants, who acted in concert to exploit her vulnerabilities. Hotel/mortal chains, through

their employees, facilitated and profited from these activities by knowingly harboring and accommodating traffickers and their victims.

16. Defendants were corporate entities responsible for operating hotels where the Plaintiff was repeatedly trafficked, manipulated, and exposed to harm. Defendants' failure to implement proper safeguards, investigate suspicious activities, or report these crimes to authorities caused significant and long-lasting damage to the Plaintiff. As a result of the Defendants' actions and negligence, Plaintiff suffered severe emotional, physical, and psychological distress.

17. Upon information and belief, Defendants knew or should have known that traffickers use threats, coercion, and manipulation to force victims, including Plaintiff, into commercial sex acts within their hotel establishments. Despite clear indicators of trafficking-related activity, Defendants facilitated these crimes by renting rooms to traffickers, victims, and buyers, thereby directly participating in and profiting from the trafficking. They financially benefited through room revenues and franchise fees while neglecting to implement or enforce anti-trafficking policies. Defendants also failed in their duty to properly train staff—such as front desk personnel, housekeeping, security, and management—to recognize and respond to signs of sex trafficking, even though industry-specific guidelines and training materials have been available since at least 2012 through organizations like AHLA and ECPAT-USA (now PACT).

18. This complaint seeks justice for the Plaintiff and holds the Defendants accountable for their role in the human trafficking operation and their neglect of duty in ensuring the safety and well-being of all individuals within its premises.

## FACTUAL ALLEGATIONS

A. *ALLEGATIONS AGAINST DEFENDANT SAI SHYAM HOTELS LLC D/B/A MOTEL 6 FORT MYERS*

19. For a period of approximately four months, beginning in or around May 2019 and continuing through August 2019, Plaintiff was subjected to repeated acts of sex trafficking at the Motel 6 Fort Myers located at 3350 Marinatown Lane, Fort Myers, Florida 33903 (the "Hotel" and "Premises"), which was owned, operated, managed, and/or controlled by Defendant Sai Shyam Hotels LLC d/b/a Motel 6 Fort Myers (hereinafter "Defendant").

20. Plaintiff was coerced and controlled through force, fraud, psychological manipulation, and the administration of addictive drugs. She was not free to leave and was under the control of Elijah Underwood a/k/a Big-E ("Big-E") who made a deal with another trafficker named Stacy Guess a/k/a Myrikal ("Myrikal") collectively called ("Traffickers"), who sold Plaintiff and another female to a man named "Boski" and profited from commercial sex acts conducted within the hotel premises.

21. Big-E arranged for Plaintiff and another female victim to be sold to a man known as "Boski" in exchange for money. These transactions occurred at the

Hotel premises. Although Plaintiff does not know Boski's legal identity, he was part of the trafficking enterprise that operated with regularity and apparent impunity at the Hotel.

22. On or about August 18, 2019, August 19, 2019, and August 23, 2019, Plaintiff was again sold at Hotel. Despite attempting to escape, she was coerced back into the trafficking scheme by Myrikal through threats and false promises.

23. Upon information and belief, Defendant by and through its employees and management, directly participated in this trafficking venture by renting rooms to Plaintiff's traffickers and allowing them to conduct commercial sex transactions on the premises despite obvious and repeated signs of sex trafficking.

24. Defendant's staff and management engaged in consistent interactions with the traffickers and victims, including but not limited to:

   a. Accepting cash or third-party payments for room rentals while knowing the victims staying in the rooms were not the paying party and were not registered guests;

   b. Allowing clients (known as "Johns") to reserve rooms despite obvious red flags such as victims' lack of identification, incoherence, fear, drug impairment, or visibly injured appearance,

and despite the victims never being the ones to initiate or manage the bookings.

c. Authorizing and processing multiple advance payments or credit card extensions from traffickers or "Johns" to allow continued occupancy by trafficking victims, even where the named cardholder was not present and where the hotel staff knew or had reason to know that the rooms were being used for commercial sex acts;

d. Providing trafficking-facilitating accommodations, such as assigning rooms in discreet corners of the property to avoid attention, turning off surveillance cameras, or not requiring identification from all guests and visitors—even during suspicious or prolonged activity involving multiple unregistered guests.

e. Failing to limit or investigate excessive male visitor traffic to rooms known to be associated with sex trafficking activity, despite repeated and obvious patterns of short-term male guests entering and exiting the same rooms in rapid succession, consistent with commercial sex transactions.

f. Developing ongoing relationships with known traffickers and Johns, including prioritizing their bookings, providing favorable

room assignments, and accepting multiple room bookings without inquiry or documentation, thereby creating a reliable infrastructure for trafficking;

25. Upon information and belief, Defendant had actual and/or constructive knowledge that sex trafficking was occurring on its premises, including in rooms where Plaintiff was trafficked. Defendant's knowledge is evidenced by numerous, persistent, and well-known indicators of trafficking activity that were open, notorious, and routinely observed by hotel staff, management, and security personnel. These red flags included, but were not limited to:

    a. A constant and high volume of unrelated adult male visitors entering and exiting specific rooms at all hours of the day and night, often remaining for only short periods, which is consistent with commercial sex transactions and not normal hotel usage;

    b. Room payments made in cash by unrelated third parties, often on behalf of unregistered occupants, in violation of industry standards and company policies requiring identification and guest registration;

    c. Frequent instances where rooms were rented by adult males who did not stay in the rooms themselves, but instead allowed young

women—often visibly distressed or impaired—to occupy the rooms for extended periods without oversight or guest records;

d. Visible signs of trauma or abuse, such as bruises, limping, and other physical indicators that should have prompted wellness checks or reports to law enforcement;

e. Obvious signs of victim distress, including guests who were disoriented, malnourished, crying, fearful, or under the influence of drugs, and often observed to be under the control or direction of another individual.

26. Despite these indicators, Defendant took no steps to investigate, report, or prevent this conduct. Hotel staff failed to notify law enforcement, refused to conduct wellness checks, and actively avoided interference with the trafficking operation.

27. Defendant knowingly benefitted from the sex trafficking venture by receiving consistent revenue from room rentals paid by traffickers or their clients over a period of several months. These payments were often made in advance and in cash or via third-party credit cards.

28. Defendant as an owner, manager, operator, or franchisor holds and monitors overall activities and management of the hotel and increases profits by:

a. Routinely renting multiple rooms to known traffickers and Johns;

b. Permitting unregistered guests to remain on-site without proper identification;

c. Charging additional fees for extended room use or for facilitating activities, including drug use, associated with trafficking;

d. Collecting repeated room payments from traffickers, often renting rooms in cash, bringing men in and out at all hours openly without regard to their unlawful activities;

e. Obvious signs of victim distress, including guests who were disoriented, malnourished, crying, fearful, or under the influence of drugs, and often observed to be under the control or direction of another individual.

29. Defendant's policies and practices, whether formal or informal—made it a safe haven for traffickers to operate with impunity, and the company failed to adopt or enforce any anti-trafficking measures, training, or reporting protocols consistent with industry standards.

30. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

B. *ALLEGATIONS AGAINST DEFENDANT TIGER FORT MYERS NORTHEAST LLC D/B/A WOODSPRING SUITES*

31. During all the relevant time from May to August 2019, Plaintiff was subjected to repeated acts of sex trafficking at the WoodSpring Suites located at 9701 Orange River Blvd Fort Myers, Florida 33905-2747 (the "Hotel" and "Premises"), which was owned, operated, managed, and/or controlled by Defendant Tiger Fort Myers Northeast LLC d/b/a Woodspring Suites (hereinafter "Defendant").

32. Plaintiff was coerced and controlled through force, fraud, psychological manipulation, and the administration of addictive drugs. She was not free to leave and was under the control of Elijah Underwood a/k/a "Big-E" and Stacy Guess a/k/a "Myrikal" (collectively, the "Traffickers"), who used threats, coercion, and physical and emotional abuse to force Plaintiff into engaging in commercial sex acts within the Hotel premises.

33. Approximately one to two weeks into her trafficking ordeal, while still under the control of her traffickers, Plaintiff was initially assisted by Myrikal and her husband in escaping from a nearby Motel 6 to the Defendant's Hotel. This escape occurred when Boski briefly left to run an errand. Upon arriving at the Hotel, a commercial sex date was arranged by her trafficker Myrikal with a wealthy client known only as "Bill." The sex act was completed at the Hotel.

34. Myrikal and her husband arranged for Plaintiff to remain at the Hotel in a second room, which they secured for the purpose of continuing to traffic Plaintiff and maintain control over her. They facilitated additional dates at the Hotel, oversaw Plaintiff's actions, and monitored her movements.

35. Shortly after, Myrikal contacted Big-E, disclosed Plaintiff's location, and negotiated her return to Big-E in exchange for a price. Plaintiff was thereafter returned to Big-E and remained under his control at the Hotel premises, where the trafficking activity continued.

36. Upon information and belief, Defendant by and through its employees and management, directly participated in this trafficking venture by renting rooms to Plaintiff's traffickers and allowing them to conduct commercial sex transactions on the premises despite obvious and repeated signs of sex trafficking.

37. Defendant's staff and management engaged in consistent interactions with the traffickers and victims, including but not limited to:

   a. Accepting cash or third-party payments for room rentals while knowing the victims staying in the rooms were not the paying party and were not registered guests;

   b. Allowing clients (known as "Johns") to reserve rooms despite obvious red flags such as victims' lack of identification,

incoherence, fear, drug impairment, or visibly injured appearance, and despite the victims never being the ones to initiate or manage the bookings.

c. Authorizing and processing multiple advance payments or credit card extensions from traffickers or "Johns" to allow continued occupancy by trafficking victims, even where the named cardholder was not present and where the hotel staff knew or had reason to know that the rooms were being used for commercial sex acts;

d. Providing trafficking-facilitating accommodations, such as assigning rooms in discreet corners of the property to avoid attention, turning off surveillance cameras, or not requiring identification from all guests and visitors—even during suspicious or prolonged activity involving multiple unregistered guests.

e. Failing to limit or investigate excessive male visitor traffic to rooms known to be associated with sex trafficking activity, despite repeated and obvious patterns of short-term male guests entering and exiting the same rooms in rapid succession, consistent with commercial sex transactions.

f. Developing ongoing relationships with known traffickers and Johns, including prioritizing their bookings, providing favorable room assignments, and accepting multiple room bookings without inquiry or documentation, thereby creating a reliable infrastructure for trafficking;

38. Upon information and belief, Defendant had actual and/or constructive knowledge that sex trafficking was occurring on its premises, including in rooms where Plaintiff was trafficked. Defendant's knowledge is evidenced by numerous, persistent, and well-known indicators of trafficking activity that were open, notorious, and routinely observed by hotel staff, management, and security personnel. These red flags included, but were not limited to:

a. A constant and high volume of unrelated adult male visitors entering and exiting specific rooms at all hours of the day and night, often remaining for only short periods, which is consistent with commercial sex transactions and not normal hotel usage;

b. Room payments made in cash by unrelated third parties, often on behalf of unregistered occupants, in violation of industry standards and company policies requiring identification and guest registration;

c. Frequent instances where rooms were rented by adult males who did not stay in the rooms themselves, but instead allowed young women—often visibly distressed or impaired—to occupy the rooms for extended periods without oversight or guest records;

d. Visible signs of trauma or abuse, such as bruises, limping, and other physical indicators that should have prompted wellness checks or reports to law enforcement;

e. Obvious signs of victim distress, including guests who were disoriented, malnourished, crying, fearful, or under the influence of drugs, and often observed to be under the control or direction of another individual.

39. Despite these indicators, Defendant took no steps to investigate, report, or prevent this conduct. Hotel staff failed to notify law enforcement, refused to conduct wellness checks, and actively avoided interference with the trafficking operation.

40. Defendant knowingly benefitted from the sex trafficking venture by receiving consistent revenue from room rentals paid by traffickers or their clients over a period of several months. These payments were often made in advance and in cash or via third-party credit cards.

41. Upon information and belief, Defendant as an owner, manager, operator, or franchisor holds and monitors overall activities and management of the hotel and increases profits by:

a. Routinely renting multiple rooms to known traffickers and Johns;

b. Permitting unregistered guests to remain on-site without proper identification;

c. Charging additional fees for extended room use or for facilitating activities, including drug use, associated with trafficking;

d. Collecting repeated room payments from traffickers, often renting rooms in cash, bringing men in and out at all hours openly without regard to their unlawful activities;

e. Obvious signs of victim distress, including guests who were disoriented, malnourished, crying, fearful, or under the influence of drugs, and often observed to be under the control or direction of another individual.

42. Defendant's policies and practices, whether formal or informal—made it a safe haven for traffickers to operate with impunity, and the company failed to adopt or enforce any anti-trafficking measures, training, or reporting protocols consistent with industry standards.

43. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## C. *ALLEGATIONS AGAINST DEFENDANT SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN*

44. During the relevant time period from approximately June to July 2019, Plaintiff was subjected to repeated acts of sex trafficking at the Red Roof Inn located at 13000 N Cleveland Ave North Fort Myers FL 33903 (the "Hotel" and "Premises"), which was owned, operated, managed, and/or controlled by Defendant Shivam Sundaram Hotels LLC d/b/a Red Roof Inn (hereinafter "Defendant").

45. During her stay at the Hotel, Plaintiff was under the coercive control of her trafficker, Elijah Underwood a/k/a "Big-E" ("Big-E") (her "Trafficker"). Big-E used a combination of physical threats, psychological manipulation, fraud, and the administration of addictive drugs, including cocaine, to maintain control over Plaintiff and to compel her to engage in commercial sex acts within the Hotel premises. Plaintiff was not free to leave and remained under constant threat and influence during her stay.

46. Upon information and belief, Room 149 at the Hotel was used for this purpose and was either registered under Big-E's name or accessed through his direct association with a Hotel employee. During this time, Plaintiff was contacted by an individual employed at the Hotel, known to her only as "Daniel," who communicated with her through an internet platform identified as "Skipthegames." In exchange for oral sex, Daniel provided Plaintiff and her trafficker with a room key, bypassing registration and payment procedures, thereby enabling the continued trafficking activity on the premises.

47. Plaintiff was compelled by her trafficker to perform commercial sex acts with "dates" who were arranged by her trafficker. Hotel staff, including Daniel, either knew or should have known about the ongoing trafficking given the circumstances, including their direct participation and facilitation of the activity.

48. On or about July 2, 2019, when Plaintiff was instructed to perform commercial sex acts with a client named Ronnie Hankey a/k/a "Tony," they were confronted by the Lee County Sheriff's Office. Plaintiff informed the deputies that she knew the front desk clerk "Daniel," who had given the room key. Plaintiff further disclosed that she had performed oral sex on Daniel in exchange for lodging under force threat and being compelled by her trafficker.

49. Despite law enforcement's attempts to contact Daniel to confirm this information, he was unreachable. Plaintiff reiterated to law enforcement that

Daniel had facilitated her access to the room and that he had arranged for her stay without registration, in exchange for sexual favors.

50. Plaintiff later discovered that the room in which she had been staying was listed as "out of service" by the Hotel. Nevertheless, this room was used to facilitate sex trafficking with the knowledge, involvement, and assistance of the Hotel staff, including Daniel.

51. Plaintiff, Big-E, and Tony were ultimately arrested and charged with drug possession and possession of drug paraphernalia. Despite clear signs of trafficking, no action was taken by the Hotel staff to protect the Plaintiff.

52. Upon information and belief, Defendant exercised ownership, management, and/or control over the Hotel premises where Plaintiff was trafficked. Defendant was responsible for hiring, training, and supervising its employees, including front desk clerks such as "Daniel," as well as for setting and enforcing policies and practices regarding guest safety and illegal activities on the premises.

53. Upon information and belief, Defendant had actual or constructive knowledge of the illicit activity occurring on the Premises, including the commercial sexual exploitation of Plaintiff, based on several red flags and suspicious indicators that were open, obvious, and persistent throughout the relevant time period. These included, but were not limited to:

a. High volume of foot traffic to and from Room 149 and other rooms at all hours of the day and night;

b. Short stays by multiple male visitors who did not check in through the front desk;

c. Visible signs of drug use and paraphernalia, including odor, discarded needles, and excessive noise complaints;

d. Security footage and front desk activity revealing irregular and suspicious guest interactions, including bypassing the standard check-in process;

e. Direct participation by Hotel employees, including Daniel, in sexually exploitative conduct and facilitation of Plaintiff's trafficking;

f. Plaintiff's physical appearance, including signs of fear, exhaustion, bruising, or being under the influence, which should have raised alarm.

54. Defendant failed to implement and enforce reasonable and industry-standard anti-trafficking measures, such as staff training to identify and report suspected trafficking, guest identification and registration protocols, room monitoring procedures, and appropriate response policies for illegal activity.

55. Hotel management and ownership either knew or were willfully blind to the conduct of its employees and the trafficking activity occurring on the Premises. They took no reasonable steps to investigate or intervene, despite clear indicators of trafficking, ongoing suspicious activity.

56. Upon information and belief, Defendant financially benefited from the trafficking of Plaintiff by collecting room rental fees, whether directly through trafficking-related payments or indirectly through increased occupancy and cash flow associated with high-turnover use of rooms for commercial sex activity. Defendant also benefited by avoiding expenses and administrative burdens that would have resulted from taking reasonable steps to report or stop trafficking.

57. Defendant's conduct, including that of its agents, employees, and management, constituted participation in a venture in violation of the TVPRA, 18 U.S.C. § 1595, by knowingly or recklessly disregarding signs of trafficking, facilitating access to rooms for traffickers and sex buyers, and profiting from the continued exploitation of Plaintiff.

58. Defendant's indifference, willful blindness, and failure to implement anti-trafficking measures created an environment where sex trafficking could occur with impunity, and where employees, such as Daniel, were free to exploit victims and engage in criminal conduct.

59. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

D. *ALLEGATIONS AGAINST DEFENDANT SIX CONTINENTS HOTELS, INC. ("SCH"), A COMPANY WITHIN THE INTERCONTINENTAL HOTELS GROUP D/B/A CANDLEWOOD SUITES*

60. During all the relevant time from October to November 2019, Plaintiff was subjected to repeated acts of sex trafficking at the Candlewood Suites located at 3626 Colonial Court, Fort Myers, Florida 33913 (the "Hotel" and "Premises"), which was owned, operated, managed, and/or controlled by Defendant Six Continents Hotels, Inc. ("SCH"), A Company Within The Intercontinental Hotels Group d/b/a Candlewood Suites (hereinafter "Defendant").

61. During her stay at the Hotel, Plaintiff was under the coercive control of one or more traffickers who exercised domination over her through a combination of physical threats, psychological manipulation, coercion, and the administration of addictive drugs, including cocaine. These traffickers compelled Plaintiff to engage in numerous commercial sex acts within the Hotel, exploiting her vulnerability and inability to leave freely.

62.     Plaintiff initially moved into the Hotel with another woman, Kelly Henderson, in or around October 2019. While they attempted to live independently, both were soon discovered by sex traffickers who began frequenting the Hotel, entering and exiting the premises at will to collect money, assert control, and monitor Plaintiff and Kelly. The Hotel became a well-known location for such exploitative conduct.

63.     Plaintiff and Kelly resided in Suite 201, where much of the trafficking activity occurred. The suite was visibly occupied for extended periods by non-registered guests and was associated with suspicious activity indicative of trafficking, including the presence of multiple unknown male visitors, irregular cash transactions, and loitering by individuals unaffiliated with legitimate hotel business.

64.     Upon information and belief, the Hotel's manager was aware of Plaintiff's and Kelly's presence and was directly involved in facilitating their stay. Specifically, the manager engaged in a quid pro quo arrangement in which she allowed Plaintiff and Kelly to remain in the room without charge on multiple occasions in exchange for the opportunity to drive Kelly's white Mercedes vehicle. This arrangement bypassed hotel protocols and provided cover for trafficking activity.

65. Despite the fact that Plaintiff was visibly under the influence of drugs, not engaged in legitimate travel or business, and regularly visited by male individuals for short periods, the Hotel staff and management took no meaningful action to investigate or intervene. On the contrary, Hotel staff, particularly the day manager, affirmatively participated by providing lodging, shielding the occupants from scrutiny, and permitting continued access to the room without lawful registration or payment.

66. Upon information and belief, Defendant failed to implement and enforce reasonable and customary anti-trafficking policies, training, and monitoring practices expected of hotel operators in the hospitality industry. Defendant failed to train staff to recognize signs of human trafficking, permitted extended occupancy without proper guest identification, and allowed suspicious and unlawful conduct to occur unchecked.

67. Upon information and belief, Defendant financially benefited from the trafficking of Plaintiff by collecting room rental fees, whether directly through trafficking-related payments or indirectly through increased occupancy and cash flow associated with high-turnover use of rooms for commercial sex activity. Defendant also benefited by avoiding expenses and administrative burdens that would have resulted from taking reasonable steps to report or stop trafficking.

68. Defendant's conduct, including that of its agents, employees, and management, constituted participation in a venture in violation of the TVPRA, 18 U.S.C. § 1595, by knowingly or recklessly disregarding signs of trafficking, facilitating access to rooms for traffickers and sex buyers, and profiting from the continued exploitation of Plaintiff.

69. Defendant's indifference, willful blindness, and failure to implement anti-trafficking measures created an environment where sex trafficking could occur with impunity, and where employees, such as Daniel, were free to exploit victims and engage in criminal conduct.

70. Defendant's conduct, including acts and omissions by its employees and management, constitutes knowing and reckless disregard for the rights and safety of Plaintiff and other victims of trafficking. Defendant's indifference to trafficking at the Hotel enabled the continued exploitation of Plaintiff and facilitated the criminal acts of her traffickers.

71. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## E. *ALLEGATIONS AGAINST DEFENDANT CHOICE HOTELS INTERNATIONAL INC. D/B/A COMFORT INN & SUITES NAPLES A/K/A COMFORT INN-EXECUTIVE*

72.     During the relevant time period in or about May 2023, Plaintiff was subjected to acts of sex trafficking at the Comfort Inn-Executive ("Comfort"), located at 3860 Tollgate Blvd, Naples, Florida, 34114 (the "Hotel" and "Premises"), which was owned, operated, managed, and/or controlled by Defendant Choice Hotels International Inc., is a Florida Foreign Profit Corporation, doing business as Comfort Inn & Suites Naples a/k/a Comfort Inn-Executive (hereinafter "Defendant").

73.     Plaintiff was lured to the Hotel under false pretenses by a trafficker, John King, who arranged transportation via Uber and promised a "date." Upon arriving at the Hotel, Plaintiff encountered not only her trafficker but also at least two other unknown adult males who were present in the hotel room. These men immediately began discussing plans to invite other women to "party" and suggested they would all travel to Miami the following day.

74.     Shortly thereafter, Plaintiff was coerced into remaining at the Hotel against her will. Although she requested to leave, the trafficker insisted that everything she needed would be provided for her. She was given a substance identified as cocaine, which she smoked. Plaintiff believes the substance was laced

or adulterated, as she became physically incapacitated and experienced severe breathing difficulties shortly after consuming it.

75. While incapacitated and in a vulnerable state, Plaintiff was taken to the bathroom, one of the younger men sexually assaulted Plaintiff while she was alone in the bathroom. Following the assault, she locked herself in the bathroom out of fear for her safety.

76. Plaintiff remained trapped in the bathroom until she believed the room had quieted down. At that point, she escaped, retrieved her belongings, and ran to the Hotel front desk.

77. Despite informing hotel staff that she was in danger, had been assaulted, and needed to charge her phone to call for help, staff at the Hotel refused to assist her. She was denied access to the lobby and told she could not remain on the premises because she was not a registered guest, despite her repeated pleas and clear signs of distress.

78. Plaintiff eventually located an outdoor outlet, charged her phone, and contacted her human trafficking advocate, who began traveling from Fort Myers to help Plaintiff. While waiting, Plaintiff again sought shelter in the lobby but was turned away by Hotel staff, who still refused to allow her access to a safe area.

79. Fearing for her life but also concerned that her advocate would not be able to find her if she left the property, Plaintiff ran to a nearby restaurant and hid

in the restroom while charging her phone. Upon her advocate reaching, Plaintiff exited the restaurant. As she did, one of the men from the Hotel exited the building wielding a firearm and yelling threats, including "I'm going to kill you."

80. Her advocate arrived on the scene and secured the Plaintiff in her vehicle. The two drove away from the Hotel and contacted the Collier County Human Trafficking Unit to report the incident. Plaintiff was then transported to the Hospital for medical treatment.

81. The hotel room was allegedly registered in the name of John King. Plaintiff did not know the full identities of the other men present, including the younger man who assaulted her, and a third individual referred to as "Freddy," who stated he was "just the driver" and drove a white Dodge Charger. John King provided Plaintiff with the cocaine and facilitated the trafficking situation, although he was not present at the time of the assault.

82. Hotel staff demonstrated actual or constructive knowledge of the trafficking and Plaintiff's distress by refusing to assist her despite multiple requests, visible signs of trauma, and her expressed statements that she had been assaulted and was in danger. Staff failed to take any action to notify law enforcement or intervene, and their inaction allowed the traffickers to threaten and attempt to re-capture the Plaintiff.

83.     Upon information and belief, Defendant, through its agents, staff, and employees, knew or should have known that sex trafficking was occurring at its Hotel. The traffickers' activities included extended stays, paying in cash, high foot traffic to and from the rooms, male guests escorting vulnerable women to the rooms, use of multiple cell phones, and solicitation on online platforms — all red flags commonly associated with commercial sex trafficking that Defendant failed to investigate, monitor, or report.

84.     Despite these indicators, Defendant's employees and management failed to take any reasonable steps to intervene, report suspicious behavior, or prevent ongoing abuse on the property. Instead, Defendant provided the instrumentalities—rooms, electricity, privacy, and security—that enabled traffickers to operate with impunity and exploit Plaintiff.

85.     Plaintiff was physically incapacitated by a substance believed to be laced with cocaine, sexually assaulted in the Hotel room, and prevented from leaving. Her attempts to leave were met with coercion and restrictions, hallmarks of trafficking, yet the Hotel took no action even after she repeatedly informed front desk staff that she had been assaulted, was in danger, and needed help.

86.     Hotel staff refused Plaintiff's urgent requests to remain in the lobby or use power to charge her phone to contact her trafficking advocate, despite her visible distress and repeated disclosures of assault and danger. Instead, they

ejected her from the premises, affirmatively denying her safety and shelter, and implicitly enabling the traffickers' continuing threats and pursuit.

87. Shortly after being denied help, Plaintiff was actively threatened by one of the traffickers who exited the Hotel brandishing a firearm and shouting threats to kill her. This occurred in plain view outside the Hotel. Hotel employees took no action to notify law enforcement or protect the victim, despite the clearly dangerous situation unfolding on their premises.

88. Upon information and belief, Defendant benefited, both directly and indirectly, from the sex trafficking venture by collecting revenues derived from the rented room used to traffic Plaintiff and by maintaining a reputation for no-questions-asked policies that attract traffickers seeking anonymity and lack of scrutiny.

89. Upon information and belief, Defendant maintained control over the policies, training, and oversight of its branded Hotel premises, yet failed to implement reasonable anti-trafficking protocols despite industry knowledge and prior warnings of human trafficking occurring across its branded properties nationwide, including at this specific location.

90. Upon information and belief, Defendant was on notice of prior incidents and complaints of suspected trafficking and illicit activity at the Hotel, yet continued to ignore, conceal, or fail to report such occurrences. These

omissions evidence a pattern of deliberate indifference and reckless disregard to the rights and safety of trafficking victims.

91. Upon information and belief, Defendant had actual or constructive knowledge of the trafficking occurring at its premises but failed to adequately train its staff to recognize and respond to red flags of human trafficking. Defendant's refusal to act in the face of obvious indicators constitutes willful blindness and/or reckless disregard as defined under 18 U.S.C. § 1595.

92. Defendant's conduct aided and abetted the trafficking venture by providing substantial assistance to traffickers through the rental of rooms, provision of privacy and security, and failure to report or intervene when red flags were present. Defendant's premises functioned as a safe haven for the traffickers.

93. Defendant chose to remain willfully blind to trafficking activities and profited from the venture by continuing to rent rooms, thus financially benefiting from the exploitation of vulnerable women, including Plaintiff. This knowing participation and failure to act were in furtherance of the sex trafficking venture.

94. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

# CAUSES OF ACTION

## COUNT I
## CAUSE OF ACTION AGAINST DEFENDANT SAI SHYAM HOTELS LLC
## D/B/A MOTEL 6 FORT MYERS
### (Human Trafficking under 18 U.S.C. § 1595, § 1591; Fla. Stat. § 787.06)

95.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

96.     Under 18 U.S.C. § 1595, § 1591, and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

97.     Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591 and Fla. Stat. § 787.06(2)(d), and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

98.     From approximately May 2019 through August 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Defendant's Hotel premises.

99.     During her stay at the Hotel, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Hotel.

100. Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

101. Upon information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

102. Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags such as:

    a. Repeated cash payments and third-party bookings for rooms occupied by distressed and unregistered female guests;

    b. High-volume, short-term male visitors consistent with commercial sex activity;

    c. Visible signs of physical abuse, drug use, and psychological trauma among guests;

    d. Ongoing relationships with known traffickers and "Johns" who frequented the hotel without interference.

103. Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

104. Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

105. Defendant's corporate structure and operational control over the Hotel, including branding, policies, oversight, and profit sharing, renders it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

106. Defendant's conduct also violated Fla. Stat. § 787.06(3), which prohibits knowingly harboring, transporting, or enabling the trafficking of persons for commercial sexual activity, and Fla. Stat. § 787.06(4), which imposes civil liability on any person or entity that knowingly, or through willful blindness, participates in a trafficking venture or knowingly benefits from such conduct.

107. Upon information and belief, Plaintiff's trafficking was not an isolated event, and upon information and belief, Defendant has previously allowed,

facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

108. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

**COUNT II**
**CAUSE OF ACTION AGAINST DEFENDANT SAI SHYAM HOTELS LLC**
**D/B/A MOTEL 6 FORT MYERS**
**(Negligence and Premises Liability)**

109. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

110. At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

111. Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

112. Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise

reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

113. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

a. Failing to implement and enforce policies and procedures to prevent human trafficking on the premises;

b. Failing to train hotel staff and management to identify and properly respond to signs of sex trafficking, coercion, and abuse;

c. Failing to monitor the property for suspicious activity and known indicators of trafficking, including repeated short-term stays, frequent cash payments, male visitors at all hours, and distressed occupants;

d. Permitting traffickers and buyers to openly operate a commercial sex enterprise on the premises;

e. Turning a blind eye to known red flags and failing to intervene or report suspicious and criminal activity to law enforcement;

f. Allowing rooms to be used for illicit purposes over an extended period despite clear indications of ongoing exploitation.

114. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

115. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

116. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

117. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

**COUNT III**
**CAUSE OF ACTION AGAINST DEFENDANT SAI SHYAM HOTELS LLC**
**D/B/A MOTEL 6 FORT MYERS**
**(Intentional Infliction of Emotional Distress)**

118. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

119. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

120. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

121. Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

122. Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

123. Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

124. Despite actual and/or constructive knowledge of criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

125. Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

126. Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

127. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

**COUNT IV**
**CAUSE OF ACTION AGAINST DEFENDANT TIGER FORT MYERS NORTHEAST LLC D/B/A WOODSPRING SUITES**
**(Human Trafficking under 18 U.S.C. § 1595, § 1591; Fla. Stat. § 787.06)**

128. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

129. Under 18 U.S.C. § 1595, § 1591, and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

130. Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591 and Fla. Stat. § 787.06(2)(d), and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

131. From approximately May 2019 through August 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Defendant's Hotel premises.

132. During her stay at the Hotel, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Hotel.

133. Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

134. Upon information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

135.    Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags such as:

a. Repeated cash payments and third-party bookings for rooms occupied by distressed and unregistered female guests;

b. High-volume, short-term male visitors consistent with commercial sex activity;

c. Visible signs of physical abuse, drug use, and psychological trauma among guests;

d. Ongoing relationships with known traffickers and "Johns" who frequented the hotel without interference.

136.    Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

137.    Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

138. Defendant's corporate structure and operational control over the Hotel, including branding, policies, oversight, and profit sharing, renders it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

139. Defendant's conduct also violated Fla. Stat. § 787.06(3), which prohibits knowingly harboring, transporting, or enabling the trafficking of persons for commercial sexual activity, and Fla. Stat. § 787.06(4), which imposes civil liability on any person or entity that knowingly, or through willful blindness, participates in a trafficking venture or knowingly benefits from such conduct.

140. Upon information and belief, Plaintiff's trafficking was not an isolated event, and upon information and belief, Defendant has previously allowed, facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

141. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

//

//

**CAUSE OF ACTION AGAINST DEFENDANT TIGER FORT MYERS
NORTHEAST LLC D/B/A WOODSPRING SUITES
(Negligence and Premises Liability)**

142. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

143. At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

144. Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

145. Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

146. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

a. Failing to implement and enforce policies and procedures to prevent human trafficking on the premises;

b. Failing to train hotel staff and management to identify and properly respond to signs of sex trafficking, coercion, and abuse;

c. Failing to monitor the property for suspicious activity and known indicators of trafficking, including repeated short-term stays, frequent cash payments, male visitors at all hours, and distressed occupants;

d. Permitting traffickers and buyers to openly operate a commercial sex enterprise on the premises;

e. Turning a blind eye to known red flags and failing to intervene or report suspicious and criminal activity to law enforcement;

f. Allowing rooms to be used for illicit purposes over an extended period despite clear indications of ongoing exploitation.

147. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

148. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

149. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

150. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

## COUNT VI
## CAUSE OF ACTION AGAINST DEFENDANT TIGER FORT MYERS NORTHEAST LLC D/B/A WOODSPRING SUITES
### (Intentional Infliction of Emotional Distress)

151. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

152. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

153. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

154. Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

155. Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

156. Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

157. Despite actual and/or constructive knowledge of criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

158. Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

159. Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

160. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

## COUNT VII
## CAUSE OF ACTION AGAINST DEFENDANT SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN
### (Human Trafficking under 18 U.S.C. § 1595, § 1591; Fla. Stat. § 787.06)

161. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

162. Under 18 U.S.C. § 1595, § 1591, and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

163. Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591 and Fla. Stat. § 787.06(2)(d), and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

164. From approximately June to July 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Defendant's Hotel premises.

165. During her stay at the Hotel, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Hotel.

166. Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

167. Defendant's employee, "Daniel," knowingly facilitated Plaintiff's sex trafficking by arranging access to a room without proper registration or payment, thereby participating in the trafficking venture and directly benefiting from the criminal conduct.

168. Upon information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

169. Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and unlawful conduct such as:

   a. A high volume of non-registered male visitors to Room 149 and other rooms at all hours;

b. Short-term stays and irregular check-in activity;

c. Drug paraphernalia and noise complaints;

d. Visible signs of Plaintiff's physical and emotional distress;

e. Security footage and firsthand participation by hotel staff, including a front desk employee known as "Daniel," who provided Plaintiff and her trafficker access to the room in exchange for sexual acts.

170. Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

171. Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

172. Defendant's corporate structure and operational control over the Hotel, including branding, policies, oversight, and profit sharing, renders it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

173. Defendant's conduct also violated Fla. Stat. § 787.06(3), which prohibits knowingly harboring, transporting, or enabling the trafficking of persons for commercial sexual activity, and Fla. Stat. § 787.06(4), which imposes civil liability on any person or entity that knowingly, or through willful blindness, participates in a trafficking venture or knowingly benefits from such conduct.

174. Upon information and belief, Plaintiff's trafficking was not an isolated event, and upon information and belief, Defendant has previously allowed, facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

175. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

**COUNT VIII**
**CAUSE OF ACTION AGAINST DEFENDANT SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN**
**(Negligence and Premises Liability)**

176. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

177. At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

178. Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

179. Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

180. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

   a. Failing to properly hire, train, and supervise staff, including front desk personnel such as "Daniel";

   b. Permitting staff to engage in or facilitate criminal conduct on the premises, including participation in sex trafficking;

c. Failing to implement and enforce adequate safety, security, and anti-trafficking policies and procedures;

d. Allowing unauthorized individuals to access rooms without registration or payment;

e. Failing to monitor security footage or respond to obvious red flags of trafficking, including excessive foot traffic, drug use, and short-term male visitors;

f. Failing to investigate or intervene upon observing Plaintiff's signs of distress, physical injuries, and coercion;

g. Ignoring or deliberately disregarding complaints, disturbances, and law enforcement involvement related to Plaintiff's stay.

181. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

182. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

183. Defendant's negligence created and maintained an environment where criminal conduct was allowed to flourish, which was a direct and foreseeable cause of the harm suffered by Plaintiff.

184. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

185. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

## COUNT XI
## CAUSE OF ACTION AGAINST DEFENDANT SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN
### (Intentional Infliction of Emotional Distress)

186. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

187. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

188. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

189. Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

190. At all relevant times, Plaintiff was a victim of sex trafficking that occurred on Defendant's premises with the knowledge, participation, facilitation, and/or deliberate indifference of Defendant's employees and agents, including a front desk employee identified as "Daniel."

191. Defendant, through its agents and employees, engaged in extreme and outrageous conduct by knowingly allowing or participating in the commercial sexual exploitation of Plaintiff, a vulnerable and coerced individual who was under the control of her trafficker.

192. Despite actual and/or constructive knowledge of the criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

193. Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

194. Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

195. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress,

including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

**COUNT X**
**CAUSE OF ACTION AGAINST DEFENDANT SIX CONTINENTS HOTELS, INC. ("SCH"), A COMPANY WITHIN THE INTERCONTINENTAL HOTELS GROUP D/B/A CANDLEWOOD SUITES**
**(Human Trafficking under 18 U.S.C. § 1595, § 1591; Fla. Stat. § 787.06)**

196. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

197. Under 18 U.S.C. § 1595, § 1591, and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

198. Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591 and Fla. Stat. § 787.06(2)(d), and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

199. From approximately October to November 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Defendant's Hotel premises.

200. During her stay at the Hotel, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Hotel.

201. Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

202. Upon information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

203. Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags such as:

    a. Multiple unknown male visitors frequenting Suite 201 for short durations;

    b. Non-registered guests loitering and engaging in suspicious conduct;

    c. Plaintiff exhibiting visible signs of drug influence, distress, and coercion; and

d. The room being continuously occupied without proper registration, payment, or scrutiny from staff.

204. Upon information and belief, Defendant's manager knowingly allowed Plaintiff and her companion to remain in the room in exchange for non-monetary favors—specifically, for the opportunity to drive Kelly Henderson's white Mercedes—thereby bypassing hotel policies and facilitating trafficking activity.

205. The manager's participation in this quid pro quo arrangement and failure to require registration or payment for the room directly enabled Plaintiff's traffickers to conceal their activity and continue exploiting her.

206. Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

207. Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

208. Defendant's corporate structure and operational control over the Hotel, including branding, policies, oversight, and profit sharing, renders it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

209. Defendant's conduct also violated Fla. Stat. § 787.06(3), which prohibits knowingly harboring, transporting, or enabling the trafficking of persons for commercial sexual activity, and Fla. Stat. § 787.06(4), which imposes civil liability on any person or entity that knowingly, or through willful blindness, participates in a trafficking venture or knowingly benefits from such conduct.

210. Upon information and belief, Plaintiff's trafficking was not an isolated event, and upon information and belief, Defendant has previously allowed, facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

211. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

//

//

# COUNT XI
## CAUSE OF ACTION AGAINST DEFENDANT SIX CONTINENTS HOTELS, INC. ("SCH"), A COMPANY WITHIN THE INTERCONTINENTAL HOTELS GROUP D/B/A CANDLEWOOD SUITES
### (Negligence and Premises Liability)

212. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

213. At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

214. Defendant, as the operator and controller of the Hotel, owed Plaintiff a duty to exercise reasonable care in the operation, supervision, and maintenance of the premises to ensure the safety and security of its guests, including the duty to protect guests from reasonably foreseeable criminal acts by third parties.

215. Defendant had actual or constructive knowledge that the Hotel was being used as a venue for sex trafficking and that Plaintiff was at risk of or subject to repeated sexual exploitation and abuse by traffickers on the premises.

216. During her stay at the Hotel, Plaintiff was trafficked and subjected to commercial sexual exploitation in Suite 201 by one or more individuals exercising coercive control over her through force, threats, drugs, and manipulation.

217. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

    a. Failing to implement and enforce policies and procedures to prevent human trafficking on the premises;

    b. Failing to train hotel staff and management to identify and properly respond to signs of sex trafficking, coercion, and abuse;

    c. Failing to monitor the property for suspicious activity and known indicators of trafficking, including repeated short-term stays, frequent cash payments, male visitors at all hours, and distressed occupants;

    d. Permitting traffickers and buyers to openly operate a commercial sex enterprise on the premises;

    e. Failure to implement or enforce adequate guest screening or identification procedures;

    f. Turning a blind eye to known red flags and failing to intervene or report suspicious and criminal activity to law enforcement;

    g. Allowing rooms to be used for illicit purposes over an extended period despite clear indications of ongoing exploitation.

218. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

219. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

220. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

221. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

## COUNT XII
### CAUSE OF ACTION AGAINST DEFENDANT SIX CONTINENTS HOTELS, INC. ("SCH"), A COMPANY WITHIN THE INTERCONTINENTAL HOTELS GROUP D/B/A CANDLEWOOD SUITES
#### (Intentional Infliction of Emotional Distress)

222. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

223. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

224. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

225. Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

226. During her stay at the Hotel, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Hotel.

227. Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

228. Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

229. Despite actual and/or constructive knowledge of criminal activity occurring on its property, Defendant failed to intervene, report, or take action to

stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

230. Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

231. Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

232. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

**COUNT XII**
**CAUSE OF ACTION AGAINST DEFENDANT CHOICE HOTELS INTERNATIONAL INC. D/B/A COMFORT INN & SUITES NAPLES A/K/A COMFORT INN-EXECUTIVE**
**(Human Trafficking under 18 U.S.C. § 1595, § 1591; Fla. Stat. § 787.06)**

233. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

234. Under 18 U.S.C. § 1595, § 1591, and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain

a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

235. Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591 and Fla. Stat. § 787.06(2)(d), and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

236. On or about May 2023, Plaintiff was repeatedly trafficked for commercial sex acts at Defendant's Hotel premises.

237. During her stay at the Hotel, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Hotel.

238. Plaintiff was trafficked, physically incapacitated, and sexually assaulted while being coerced to remain at the Hotel. Despite obvious signs of danger and repeated requests for help, hotel staff failed to intervene or notify authorities, instead ejecting Plaintiff from the premises and thereby exposing her to further danger, including armed threats from her traffickers.

239. Defendant knowingly or in reckless disregard participated in and/or financially benefited from a venture that it knew or should have known involved

the sex trafficking of Plaintiff in violation of 18 U.S.C. §§ 1591(a), 1595(a), and Fla. Stat. § 787.06.

240. Upon information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

241. Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags such as:

  a. Cash payments and extended stays;

  b. High foot traffic to and from rooms;

  c. The presence of unaccompanied, vulnerable women escorted by adult males;

  d. Use of multiple phones;

  e. Reports of visible drug use and prostitution activity;

  f. Online advertisements for commercial sex acts.

242. Defendant's employees and agents were placed on actual notice of Plaintiff's trafficking through her own direct disclosures that she had been

assaulted and was in danger, her visible distress, and her repeated pleas for assistance. Despite this, Hotel staff affirmatively refused aid, denied her shelter, and turned her away from the lobby—actions that facilitated the traffickers' continuing control.

243. Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

244. Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

245. Defendant's conduct constituted knowing or reckless participation in the trafficking venture under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including through:

246. Renting hotel rooms to traffickers;

247. Failing to act on reports and obvious signs of trafficking;

248. Ejecting Plaintiff while she was in visible distress and danger;

249. Refusing access to lobby or charging outlets to call for help;

250. Providing no meaningful training or policies to staff to identify and respond to trafficking.

251. Defendant's corporate structure and operational control over the Hotel, including branding, policies, oversight, and profit sharing, renders it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

252. Defendant's conduct also violated Fla. Stat. § 787.06(3), which prohibits knowingly harboring, transporting, or enabling the trafficking of persons for commercial sexual activity, and Fla. Stat. § 787.06(4), which imposes civil liability on any person or entity that knowingly, or through willful blindness, participates in a trafficking venture or knowingly benefits from such conduct.

253. Upon information and belief, Plaintiff's trafficking was not an isolated event, and upon information and belief, Defendant has previously allowed, facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

254. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## COUNT XIV
## CAUSE OF ACTION AGAINST DEFENDANT CHOICE HOTELS INTERNATIONAL INC. D/B/A COMFORT INN & SUITES NAPLES A/K/A COMFORT INN-EXECUTIVE
### (Negligence and Premises Liability)

255. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

256. At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

257. Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

258. Defendant also had a duty to properly train and supervise its employees to recognize and respond to signs of human trafficking, criminal activity, and guests in distress on its property.

259. Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

260. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

a. Failing to monitor and investigate suspicious activity consistent with human trafficking on its premises;

b. Failing to implement and enforce reasonable security measures and anti-trafficking protocols;

c. Failing to properly train its staff to recognize and respond to red flags of trafficking and criminal conduct;

d. Failing to provide assistance to Plaintiff when she visibly presented with signs of distress and directly reported being in danger and having been assaulted;

e. Refusing Plaintiff access to a safe space within the Hotel or to charge her phone in order to contact help; and

f. Allowing dangerous individuals, including traffickers, to remain on the property unmonitored and unreported.

261. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

262.     Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

263.     Defendant knew or should have known that the Hotel was being used, or was at risk of being used, for illicit and criminal purposes, including human trafficking and sexual exploitation.

264.     Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

265.     Despite the foreseeability of such harm, Defendant failed to take reasonable steps to prevent the harm suffered by Plaintiff or to provide her with assistance when she reported being in immediate danger.

266.     As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

**COUNT XV**
**CAUSE OF ACTION AGAINST DEFENDANT CHOICE HOTELS INTERNATIONAL INC. D/B/A COMFORT INN & SUITES NAPLES A/K/A COMFORT INN-EXECUTIVE**
**(Intentional Infliction of Emotional Distress)**

267.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

268. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

269. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

270. Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

271. Defendant knew or should have known that its acts and omissions created a high risk of causing severe emotional distress to Plaintiff, a vulnerable and visibly distressed woman who sought help and safety on its premises.

272. Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

273. Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear

indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

274. Despite actual or constructive knowledge of the criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

275. Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

276. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against each Defendant in excess of $75,000.00 and prays that this case be set for trial before a jury and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally for:

a. all economic damages to which they are entitled;

b. all actual damages to which they are entitled;

c. all compensatory damages available for the losses described with respect to each cause of action;

d. all incidental and consequential and/or special damages;

e. all mental anguish and emotional distress damages to which they are entitled;

f. past and future medical expenses, as well as the costs associated with past and future life care;

g. past and future mental distress;

h. all restitution damages to which they are entitled;

i. all disgorgement of profits to which they are entitled;

j. all unjust enrichment damages to which they are entitled;

k. all available economic damages, including without limitation, conscious pain and suffering, past, present, and future injuries, physical injuries, emotional/mental and psychiatric/psychologic injuries, and loss of enjoyment of life;

l. exemplary, treble, and/or punitive damages;

m. attorneys' fees and costs of this suit;

n. punitive damages with respect to each cause of action;

o.  pre-judgment and post-judgment interest at the highest rate allowed by law; and

p.  all other relief to which they are entitled in law or in equity.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## VERIFICATION

Under penalties of perjury, I Jane Doe M.O., declare that I have read the foregoing and that the facts alleged are true to the best of my knowledge and belief.

_____
Jane Doe M.O.

Dated: June 13th, 2025

THE LAW OFFICES OF TRAVIS R. WALKER, P.A.

By: ___/s/ Travis R. Walker___
Travis R. Walker Esq.
Florida Bar No. 33693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis@traviswalkerlaw.com
service@traviswalkerlaw.com
wasi@traviswalkerlaw.com