## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

Jane Doe M.O.,

                      Plaintiff,

      Vs.

Sai Shyam Hotels LLC d/b/a Motel 6 Fort Myers; Tiger Fort Myers Northeast LLC d/b/a WoodSpring Suites; Shivam Sundaram Hotels LLC d/b/a Red Roof Inn; C S Colonial CT LLC d/b/a Candlewood Suites; R&M Real Estate Company Inc. d/b/a Comfort Inn & Executive Suites,

                Defendants.

_____/

Case No. 2:25-cv-00517

**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJURIES**

**JURY TRIAL DEMANDED**

## <u>SECOND AMENDED COMPLAINT FOR DAMAGES</u>

**COMES NOW**, Jane Doe M.O.[1] ("Plaintiff"), by and through her undersigned counsel, files this second amended complaint for damages and injuries against Defendants Sai Shyam Hotels LLC d/b/a Motel 6 Fort Myers; Tiger Fort Myers Northeast LLC d/b/a WoodSpring Suites; Shivam Sundaram Hotels LLC d/b/a Red Roof Inn; C S Colonial CT LLC d/b/a Candlewood Suites; R&M Real Estate Company Inc. d/b/a Comfort Inn & Executive Suites, (collectively "Defendants") makes the following averments:

//

---

[1] A Motion for Protective Order regarding Plaintiff's identity was filed (Dkt.11).

## PARTIES

1. Plaintiff Jane Doe M.O. is a natural person and resident of Collier County, Florida. Plaintiff is a survivor of sex trafficking, over the age of majority, and otherwise *sui juris*.

2. Defendant Sai Shyam Hotels LLC is a Florida Limited Liability Company, doing business as Motel 6 Fort Myers ("Motel 6"), located at 3350 Marinatown Lane, Fort Myers, Florida 33903, and can be served with this complaint via its registered and manager, Patel Sandip, located at B 6510 N US Hwy 301, Tampa, FL 33610.

3. Defendant Tiger Fort Myers Northeast LLC is a Florida Foreign Limited Liability Company, doing business as WoodSpring Suites ("WoodSpring"), located at 9701 Orange River Blvd, Fort Myers, Florida 33905-2747, and can be served with this complaint via its registered agent NRAI Services, Inc. located at 1200 South Pine Island Road, Plantation, Florida 33324.

4. Defendant Shivam Sundaram Hotels LLC is a Florida Limited Liability Company, doing business as Red Roof Inn ("Red Roof"), located at 13000 N Cleveland Ave, North Fort Myers, FL 33903, and can be served with this complaint via its registered agent and manager, Patel, Tarun, located at 12859 Chadsford Cir Fort Myers, FL 33913.

5.     Defendant C S Colonial CT LLC is a Florida Limited Liability Company doing business as Candlewood Suites ("Candlewood"), located at 3626 Colonial Court, Fort Myers, Florida 33913, and can be served with this complaint via its registered agent SSI Accounting and Tax Service Inc. at 1342 Colonial Blvd, Suite D-28, Fort Myers, FL 33907.

6.     Defendant R&M Real Estate Company Inc. is a Florida Foreign Profit Corporation, doing business as Comfort Inn & Executive Suites ("Comfort"), located at 3860 Tollgate Blvd, Naples, Florida, 34114, and can be served with this complaint via its registered agent, Herrera, Maria S, 3860 Tollgate Blvd, Naples, FL 34114.

7.     Defendant DOES Johns are individuals and entities whose identities are presently unknown to Plaintiff and may have also contributed to the acts and omissions alleged herein. Plaintiff reserves the right to amend this Complaint to include additional parties as discovery progresses.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 because this action arises in the Constitution, laws, or treaties of the United States, namely, the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. Section 1595. Additionally, this Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a)

because they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. Specifically, the Defendants' misconduct and omissions led to injuries sustained by the Plaintiff within this district. Additionally, the Defendants reside, conduct business, and operate within this district, further establishing proper venue.

10.    This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves parties that are citizens of different states.

11.    Accordingly, this Court has both subject matter jurisdiction and proper venue over this action.

## INTRODUCTION
### (Allegations Common to All Defendants)

12.    This is an action for human trafficking, negligence, and severe physical, emotional, and financial harm arising from the Defendants' unlawful actions and omissions in facilitating human trafficking activities and permitting the use of illicit drugs on its premises. Plaintiff was the victim of severe exploitation, coerced into a life of trafficking, abuse, and controlled drug and/or weapons use within the Defendants' premises. Despite being fully aware of or

negligent of failing to recognize the signs of such criminal activity, the Defendants allowed the trafficking and exploitation to continue unchecked.

13.     Defendants chose to ignore, allow, condone, facilitate, support, and permit such activity and are liable to Plaintiff for their actions and failures to act. The basis for Defendants' liability is straightforward. Plaintiff brings this action pursuant to the civil remedy provision of the TVPRA, 18 U.S.C. § 1595(a), against Defendants for knowingly benefited from participation in a venture which it *knew or should have known* engaged in an act in violation of the TVPRA because it (i) rented the rooms in which Plaintiff was sex trafficked, (ii) collected fees for rental of those rooms, and (iii) did so notwithstanding that it knew or should have known that Plaintiff was a victim of sex trafficking. As such, liable to Plaintiff for her damages under the TVPRA.

14.     Defendants negligently breached duties imposed by law, assumed by contract and behavior, and voluntarily undertaken. Defendants knew or should have known of the foreseeable risk of sex trafficking and other sex crimes in the hotel industry and failed to act as similarly situated businesses would in like circumstances. As such, Defendants are liable to Plaintiff for her damages under Florida common law.

15.     From about four years, on or about May 2019 to May 2023, Plaintiff was repeatedly trafficked and subjected to commercial sex acts through force,

fraud, and coercion. During this time, she was harbored and exploited within hotel and motel properties owned, operated, maintained, managed, franchised, and licensed by Defendants, who acted in concert to exploit her vulnerabilities. Defendants, through their hotel/motel chains, through their employees, agents, facilitated and profited from these activities by knowingly harboring and accommodating traffickers and their victims.

16.     Defendants were corporate entities responsible for operating hotels where the Plaintiff was repeatedly trafficked, manipulated, and exposed to harm. Defendants' failure to implement proper safeguards, investigate suspicious activities, or report these crimes to authorities caused significant and long-lasting damage to the Plaintiff. As a result of the Defendants' actions and negligence, Plaintiff suffered severe emotional, physical, and psychological distress.

17.     Defendants knew or should have known that traffickers use threats, coercion, and manipulation to force victims, including Plaintiff, into commercial sex acts within their hotel establishments. Despite clear indicators of trafficking-related activity, Defendants facilitated these crimes by renting rooms to traffickers, victims, and buyers, thereby directly participating in and profiting from the trafficking. They financially benefited through room revenues while neglecting to implement or enforce anti-trafficking policies. Defendants also failed in their duty to properly train staff—such as front desk personnel, housekeeping, security, and

management—to recognize and respond to signs of sex trafficking, even though industry-specific guidelines and training materials have been available since at least 2012 through organizations like AHLA and ECPAT-USA (now PACT).

18.     This complaint seeks justice for the Plaintiff and holds the Defendants accountable for their role in the human trafficking operation and their neglect of duty in ensuring the safety and well-being of all individuals within their premises.

## FACTUAL ALLEGATIONS

### A. ALLEGATIONS AGAINST DEFENDANT SAI SHYAM HOTELS LLC D/B/A MOTEL 6 FORT MYERS

19.     For a period of approximately four months, beginning in or around May 2019 and continuing through August 2019, Plaintiff was subjected to repeated acts of sex trafficking at the Motel 6 located at 3350 Marinatown Lane, Fort Myers, Florida 33903 (the "Motel 6" and "premises"), which was owned, operated, maintained, managed, and/or controlled by Defendant Sai Shyam Hotels LLC (hereinafter "Defendant").

20.     Plaintiff was coerced and controlled through force, fraud, psychological manipulation, and the administration of addictive drugs and/or weapons. She was not free to leave and was under the control of multiple traffickers including Elijah Underwood a/k/a Big-E ("Big-E"), who made a deal with another trafficker named Stacy Guess a/k/a Myrikal ("Myrikal") collectively called ("traffickers"), who sold Plaintiff and another female to a man named

"Boski" and profited from commercial sex acts conducted within the Motel 6 premises.

21. Big-E arranged for Plaintiff and another female victim to be sold to a man known as "Boski" in exchange for money. These transactions occurred at the Motel 6. Although Plaintiff does not know Boski's legal identity, he was part of the trafficking enterprise that operated with regularity and apparent impunity at the Motel 6.

22. Plaintiff's sex traffickers carried weapons and operated openly and brazenly on the Motel 6's premises, common areas, and approaches.

23. On or about August 18, 2019, August 19, 2019, and August 23, 2019, Plaintiff was repeatedly sold at the Motel 6 premises. Despite attempting to escape, she was coerced back into the trafficking scheme by Myrikal through threats, fraud, manipulation, and false promises.

24. At all times relevant hereto, Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the premises, giving Defendant specific and direct knowledge of crimes and sex trafficking at the Motel 6 during the relevant period.

25. Defendant, by and through its employees, agents, and management and/or representatives, and/or as an owner, operator, maintainer, manager,

and/or as a franchisee directly benefited for this trafficking venture by renting rooms to Plaintiff's traffickers and allowing them to conduct commercial sex transactions on the Motel 6 despite obvious and repeated signs of sex trafficking during the relevant period and holds and monitors overall activities and management of the Motel 6 and increases its profits by:

    a. Routinely renting multiple rooms to known traffickers and Johns;

    b. Permitting unregistered guests to remain on-site without proper identification;

    c. Charging additional fees for extended room use or for facilitating activities, including drug use, associated with trafficking;

    d. Collecting repeated room payments from traffickers, often renting rooms in cash, bringing men in and out at all hours openly without regard to their unlawful activities;

    e. On information and belief, sold condoms to sex traffickers, purchasers for commercial sex, and for victims of trafficking.

26. During at least part of the time Plaintiff was sex trafficked at the Motel 6, Plaintiff's traffickers sold drugs out of the room/s in which Plaintiff was sex trafficked and also trafficked other women and minors out of the same room/s in which Plaintiff was sex trafficked. As such, Plaintiff's traffickers were familiar to

Defendant employees, agents, and/or representatives at the time they trafficked Plaintiff for sex at the Motel 6.

27.    On information and belief, at least one of Defendant's employees, agents, and/or representatives who worked at the front desk at the Motel 6 bought drugs from at least one of Plaintiff's traffickers.

28.    Defendant, by and through its employees, agents, and management and/or representatives, directly participated in this trafficking venture by continuing to rent rooms to Plaintiff's traffickers and allowing them to conduct commercial sex transactions on the Motel 6 despite obvious and repeated signs of sex trafficking during the relevant period. Defendant's staff and management engaged in consistent interactions with the traffickers and victims, including but not limited to:

   a. Accepting cash or third-party payments for room rentals while knowing the victims staying in the rooms were not the paying party and were not registered guests;

   b. Allowing clients (known as "Johns") to reserve rooms despite obvious red flags such as victims' lack of identification, incoherence, fear, drug impairment, or visibly injured appearance, and despite the victims never being the ones to initiate or manage the bookings.

c.  Authorizing and processing multiple advance payments or credit card extensions from traffickers or "Johns" to allow continued occupancy by trafficking victims, even where the named cardholder was not present and where the hotel staff knew or had reason to know that the rooms were being used for commercial sex acts;

d.  Providing trafficking-facilitating accommodations, such as assigning rooms in discreet corners of the property to avoid attention, turning off surveillance cameras, or not requiring identification from all guests and visitors — even during suspicious or prolonged activity involving multiple unregistered guests.

e.  Failing to limit or investigate excessive male visitor traffic to rooms known to be associated with sex trafficking activity, despite repeated and obvious patterns of short-term male guests entering and exiting the same rooms in rapid succession, consistent with commercial sex transactions.

f.  Developing ongoing relationships with known traffickers and Johns, including prioritizing their bookings, providing favorable room assignments, and accepting multiple room bookings without

inquiry or documentation, thereby creating a reliable infrastructure for trafficking.

29.     On information and belief, Defendant's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the hotel premises by, among other things, acting as lookouts for Plaintiff's traffickers and informing the traffickers of police activity at the hotel as well as warning Plaintiff's traffickers about guest complaints and high visitor traffic drawing unwanted attention.

30.     On information and belief, at least one of Plaintiff's traffickers paid Defendant's employees, agents, and/or representatives to act as lookouts and notify the trafficker of police activity at the hotel, among other things.

31.     On information and belief, Defendant turned a blind eye to safety and security issues at the hotel when revenue was satisfactory, even when Defendant knew or should have known part of the profits were derived from sex trafficking ventures victimizing Plaintiff and other women and minor victims.

32.     At all relevant times, Defendant received revenue from room rentals at the Motel 6, including the rooms in which Plaintiff was trafficked.

33.     Defendant had actual and/or constructive knowledge that sex trafficking was occurring on its premises, including in rooms where Plaintiff was trafficked. Defendant's knowledge is evidenced by numerous, persistent, and

well-known indicators of trafficking activity that were open, notorious, and routinely observed by hotel staff, management, and security personnel. These red flags included, but were not limited to:

a. A constant and high volume of unrelated adult male visitors entering and exiting specific rooms at all hours of the day and night, often remaining for only short periods, which is consistent with commercial sex transactions and not normal hotel usage;

b. Room payments made in cash by unrelated third parties, often on behalf of unregistered occupants, in violation of industry standards and company policies requiring identification and guest registration;

c. Frequent instances where rooms were rented by adult males who did not stay in the rooms themselves, but instead allowed young women—often visibly distressed or impaired—to occupy the rooms for extended periods without oversight or guest records;

d. Visible signs of trauma or abuse, such as bruises, limping, inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering,

soliciting male patrons, and other physical indicators that should have prompted wellness checks or reports to law enforcement;

e. Obvious signs of victim distress, including guests who were disoriented, malnourished, crying, fearful, or under the influence of drugs, and often observed to be under the control or direction of another individual;

f. On more than one occasion, Defendant's employees, agents, and/or representatives entered the room/s in which Plaintiff was sex trafficked at the Motel 6. For example, housekeeping at the hotel cleaned the room/s in which Plaintiff was trafficked. Defendant knew or should have known that the contents of Plaintiff's room/s at the Motel 6 were indicative of commercial sex activity;

g. When Plaintiff interacted with Defendant's staff, she often wore little clothing and stood in rooms replete with evidence of sex trafficking that had been reserved by sex traffickers and drug dealers. Defendant's employees, agents, and/or representatives, including its housekeeping staff, knew or should have known Plaintiff was a victim of sex trafficking at the hotel through its

opportunities to observe Plaintiff and the rooms in which she was repeatedly victimized.

34.    Despite these indicators, Defendant took no steps to investigate, report, or prevent this conduct. Motel 6 staff failed to notify law enforcement, refused to conduct wellness checks, and actively avoided interference with the trafficking operation. In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff. Further, on information and belief, Defendant reviewed hotel performance data, room occupancy data, and profitability data in connection with managing and/or operating the hotel premises.

35.    During the period Plaintiff was sex trafficked, other women and minors were also sex trafficked at the hotel premises. Plaintiff believes some were trafficked by Plaintiff's traffickers and others by other traffickers. Many such victims displayed the signs described in the foregoing paragraph.

36.    Plaintiff has no control over money and was required to turn over money to her traffickers at the hotel premises.

37.    As described in the foregoing paragraphs, Defendant knew or should have known that Plaintiff was a victim of sex trafficking who was being sex trafficked at the Motel 6, over which Defendant exercised control. Defendant

negligently failed to respond, and as a result, the continuous victimization of Plaintiff remains unchecked.

38.     Defendant knew or should have known that the hotel premises were utilized for sex trafficking and other crimes. When Plaintiff was sex trafficked at the hotel, she witnessed other young women and minors being trafficked for sex at the hotel. As a result, a large number of buyers frequented the hotel each day to pay for commercial sex.

39.     Plaintiff's traffickers chose to traffic Plaintiff at the Motel 6 because of the hotel's sordid reputation as a hub of sex trafficking and other sex crimes. Defendant knew or should have known that the Motel 6 and its approaches were rife with crime, including sex trafficking, before, during, and after Plaintiff's sex trafficking. Defendant nonetheless permitted Plaintiff to be sex trafficked at the Motel 6.

40.     Defendant knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's sex trafficking at the Motel 6. Specifically, and based on publicly available information and police reports, including Defendant's franchisor's several public statements over the past ten years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels, and claiming they are committed to fighting against it. Defendant

knew or should have known of such sex crimes, among others, occurring on Motel 6's premises and approaches prior to Plaintiff's sex trafficking.

41.    On information and belief, Defendant has been named in numerous civil lawsuits arising out of sex trafficking and drug use at their premises, including during the time of trafficking of Plaintiff in this case, which puts Defendant on further notice of the sex trafficking.

42.    Defendant did not act to address or combat this gruesome history prior to Plaintiff's trafficking. Indeed, Defendant continued to allow, condone, and permit sex trafficking and other sex crimes at the hotel after Plaintiff was trafficked for sex at the Motel 6. Specifically, and based on publicly available information and police reports, Defendant knew or should have known of such sex crimes, arrests, and incidents, among others, occurring on Motel 6's premises and approaches after Plaintiff was sex trafficked at the Motel 6 with another victim.

43.    On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the Motel 6. Defendants managed, controlled, and monitored, showing the pervasiveness of sex trafficking before and after Plaintiff was trafficked.

44.    Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that 92% of the calls it received involving hotels and motels reported sex trafficking, and another 2% reported a combination

of sex and labor trafficking.[2] A 2017 Cornell University study found that 63% of trafficking incidents occurred in hotels, and approximately 92% of hotel respondents reported being moderately to strongly familiar with sex trafficking, with an average familiarity score of 4.105 on a 5-point scale.[3]

45.    Defendant knew or should have known that during the relevant period, the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and stop human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

   a.  persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

   b.  persons who lack freedom of movement or are constantly monitored;

   c.  persons who have no control over or possession of money or ID;

---

[2] Human Trafficking and the Hotel Industry, Polaris Project, Retrieved September, 5th 2025, from https://polarisproject.org/wp-content/uploads/2019/09/human-trafficking-hotel-industry-recommendations.pdf

[3] Giovanna L. C. Cavagnaro. Sex Trafficking: The Hospitality Industry's Role and Responsibility.    Retrieved    September,    5th    2025,    from https://ecommons.cornell.edu/server/api/core/bitstreams/8aa2e886-f105-4927-a6aa-899c35f39ab4/content

d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g.  extended stay with few or no personal possessions in the room; h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

h.  the same person reserves multiple rooms;

i.  a room is rented hourly, less than a day, or for an atypical extended stay;

j.  attempts to sell items to or beg from patrons or staff;

k.  cars in the parking lot regularly parked backward, so the license plates are not visible; m. loitering and solicitation of male patrons;

l.  waiting at a table or bar and picked up by a male (trafficker or customer) o. persons asking staff or patrons for food or money; and

m. persons taking cash or receipts left on tables.[4]

---

[4] "No Room For Trafficking Member Resource Guide," American Hotel & Lodging Association (AHLA), which incorporates DHS Blue Campaign materials and training protocols. Retrieved September, 5th 2025, from

46.     Defendant knew or should have known that in 2018, the National Human Trafficking Hotline ranked Florida as 4th in the nation for human trafficking, making it reasonable to expect any involved party to have been aware of these facts during that period.[5]

47.     By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the Motel 6 generally, and in response to Plaintiff's sex trafficking at the Motel 6 specifically, Defendant's employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the Motel 6.

48.     Additionally, under Florida law, Defendant had a duty to exercise ordinary care to keep their hotel's premises in a reasonably safe condition and not to expose invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions. Defendant also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. Likewise, Defendant had other duties described further herein, including the duty to train hotel personnel, supervise

---

https://www.ahla.com/sites/default/files/NRFT-%20Member%20Resource%20Guide.pdf; DHS Blue Campaign official resource downloads and indicator cards for hospitality: Retrieved September, 5th 2025, from https://www.dhs.gov/blue-campaign/request-materials

[5] Federal Human Trafficking Report. State Summary: FLORIDA. Retrieved September, 5th 2025, from https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Human-Trafficking-Report-FL.pdf

hotel personnel, monitor the property, secure the property, remediate the property in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

49. Defendant breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff, and benefited from the sex trafficking venture by receiving consistent revenue from room rentals paid by traffickers or their clients over a period of several months. These payments were often made in advance and in cash or via third-party credit cards as explained in the above paragraphs.

50. Defendant acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the premises to combat the well-known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the premises on the pervasiveness of sex trafficking in the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the premises to prevent sex trafficking at the hotel, by allowing rooms at the premises to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the premises about which Defendant had actual and/or constructive

knowledge. Through such actions and omissions, among others, the Defendant allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

51.     Defendant's policies and practices, whether formal or informal, made it a safe haven for traffickers to operate with impunity, and the company failed to adopt or enforce any anti-trafficking measures, training, or reporting protocols consistent with industry standards.

52.     As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## B. *ALLEGATIONS AGAINST DEFENDANT TIGER FORT MYERS NORTHEAST LLC D/B/A WOODSPRING SUITES*

53.     During all the relevant time from May to August 2019, Plaintiff was subjected to repeated acts of sex trafficking at the WoodSpring Suites located at 9701 Orange River Blvd Fort Myers, Florida 33905-2747 (the "WoodSpring" and "premises"), which was owned, operated, maintained, managed, and/or controlled by Defendant Tiger Fort Myers Northeast LLC (hereinafter "Defendant").

54. Plaintiff was coerced and controlled through force, fraud, psychological manipulation, and the administration of addictive drugs and/or weapons. She was not free to leave and was under the control of Elijah Underwood a/k/a "Big-E" and Stacy Guess a/k/a "Myrikal" (collectively, the "traffickers"), who used threats, coercion, and physical and emotional abuse to force Plaintiff into engaging in commercial sex acts within the WoodSpring premises.

55. Approximately one to two weeks into her trafficking period, while still under the control of her traffickers, Plaintiff was initially assisted by Myrikal and her husband in escaping from a nearby Motel 6 to the WoodSpring. This escape occurred when Boski briefly left to run an errand. Upon arriving at the WoodSpring, she found herself in a similar situation of sex trafficking arranged by her trafficker, Myrikal, who induced her by force, fraud, and manipulation in a commercial sex date with a wealthy client known only as "Bill." The sex act was completed at the WoodSpring.

56. Myrikal and her husband arranged for Plaintiff to remain at the WoodSpring in a second room, which they secured for the purpose of continuing to traffic Plaintiff and maintain control over her. They facilitated additional dates at the WoodSpring premises, oversaw Plaintiff's actions, and monitored her movements so that she will not escape from their control.

57.     Shortly after, Myrikal contacted Big-E, disclosed Plaintiff's location, and negotiated her return to Big-E in exchange for a price. Plaintiff was thereafter returned to Big-E and remained under his control at the WoodSpring premises, where the trafficking activity continued.

58.     Plaintiff's sex traffickers carried weapons and operated openly and brazenly on WoodSpring's premises, common areas, and approaches.

59.     At all times relevant hereto, Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the premises, giving Defendant specific and direct knowledge of crimes and sex trafficking at the WoodSpring during the relevant period.

60.     Defendant, by and through its employees, agents, and management and/or representatives, and/or as an owner, operator, maintainer, manager, and/or as a franchisee directly benefited for this trafficking venture by renting rooms to Plaintiff's traffickers or their Johns over a period of several days or weeks and allowing them to conduct commercial sex transactions on the WoodSpring despite obvious and repeated signs of sex trafficking during the relevant period and holds and monitors overall activities and management of the WoodSpring and increases its profits by:

     a.  Routinely renting multiple rooms to known traffickers and Johns;

b. Permitting unregistered guests to remain on-site without proper identification;

c. Charging additional fees for extended room use or for facilitating activities, including drug use, associated with trafficking;

d. Collecting repeated room payments from traffickers, often renting rooms in cash, bringing men in and out at all hours openly without regard to their unlawful activities;

e. On information and belief, sold condoms to sex traffickers, purchasers for commercial sex, and for victims of trafficking.

61. During at least part of the time Plaintiff was sex trafficked at the WoodSpring, Plaintiff's traffickers sold drugs out of the room/s in which Plaintiff was sex trafficked and also trafficked other women and minors out of the same room/s in which Plaintiff was sex trafficked. As such, Plaintiff's traffickers were familiar to Defendant employees, agents, and/or representatives at the time they trafficked Plaintiff for sex at the WoodSpring.

62. On information and belief, at least one of Defendant's employees, agents, and/or representatives who worked at the front desk at the WoodSpring bought drugs from at least one of Plaintiff's traffickers.

63. Defendant, by and through its employees, agents, and management and/or representatives, directly participated in this trafficking venture by

continuing to rent rooms to Plaintiff's traffickers and allowing them to conduct commercial sex transactions on the WoodSpring despite obvious and repeated signs of sex trafficking during the relevant period. Defendant's staff and management engaged in consistent interactions with the traffickers and victims, including but not limited to:

  a. Accepting cash or third-party payments for room rentals while knowing the victims staying in the rooms were not the paying party and were not registered guests;

  b. Allowing clients (known as "Johns") to reserve rooms despite obvious red flags such as victims' lack of identification, incoherence, fear, drug impairment, or visibly injured appearance, and despite the victims never being the ones to initiate or manage the bookings.

  c. Authorizing and processing multiple advance payments or credit card extensions from traffickers or "Johns" to allow continued occupancy by trafficking victims, even where the named cardholder was not present and where the hotel staff knew or had reason to know that the rooms were being used for commercial sex acts;

  d. Providing trafficking-facilitating accommodations, such as assigning rooms in discreet corners of the property to avoid attention, turning off surveillance cameras, or not requiring identification from all

guests and visitors—even during suspicious or prolonged activity involving multiple unregistered guests.

e.  Failing to limit or investigate excessive male visitor traffic to rooms known to be associated with sex trafficking activity, despite repeated and obvious patterns of short-term male guests entering and exiting the same rooms in rapid succession, consistent with commercial sex transactions.

f.  Developing ongoing relationships with known traffickers and Johns, including prioritizing their bookings, providing favorable room assignments, and accepting multiple room bookings without inquiry or documentation, thereby creating a reliable infrastructure for trafficking.

64.    On information and belief, Defendant's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the hotel premises by, among other things, acting as lookouts for Plaintiff's traffickers and informing the traffickers of police activity at the hotel as well as warning Plaintiff's traffickers about guest complaints and high visitor traffic drawing unwanted attention.

65.     On information and belief, at least one of Plaintiff's traffickers paid Defendant's employees, agents, and/or representatives to act as lookouts and notify the trafficker of police activity at the hotel, among other things.

66.     On information and belief, Defendant turned a blind eye to safety and security issues at the hotel when revenue was satisfactory, even when Defendant knew or should have known part of the profits were derived from sex trafficking ventures victimizing Plaintiff and other women and minor victims.

67.     At all relevant times, Defendant received revenue from room rentals at the WoodSpring, including the rooms in which Plaintiff was trafficked.

68.     Defendant had actual and/or constructive knowledge that sex trafficking was occurring on its premises, including in rooms where Plaintiff was trafficked. Defendant's knowledge is evidenced by numerous, persistent, and well-known indicators of trafficking activity that were open, notorious, and routinely observed by hotel staff, management, and security personnel. These red flags included, but were not limited to:

    a.  A constant and high volume of unrelated adult male visitors entering and exiting specific rooms at all hours of the day and night, often remaining for only short periods, which is consistent with commercial sex transactions and not normal hotel usage;

b. Room payments made in cash by unrelated third parties, often on behalf of unregistered occupants, in violation of industry standards and company policies requiring identification and guest registration;

c. Frequent instances where rooms were rented by adult males who did not stay in the rooms themselves, but instead allowed young women—often visibly distressed or impaired—to occupy the rooms for extended periods without oversight or guest records;

d. Visible signs of trauma or abuse, such as bruises, limping, inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, soliciting male patrons, and other physical indicators that should have prompted wellness checks or reports to law enforcement;

e. Obvious signs of victim distress, including guests who were disoriented, malnourished, crying, fearful, or under the influence of drugs, and often observed to be under the control or direction of another individual;

f. On more than one occasion, Defendant's employees, agents, and/or representatives entered the room/s in which Plaintiff was sex trafficked at the WoodSpring. For example, housekeeping at the hotel

cleaned the room/s in which Plaintiff was trafficked. Defendant knew or should have known that the contents of Plaintiff's room/s at the WoodSpring were indicative of commercial sex activity;

g. When Plaintiff interacted with Defendant's staff, she often wore little clothing and stood in rooms replete with evidence of sex trafficking that had been reserved by sex traffickers and drug dealers. Defendant's employees, agents, and/or representatives, including its housekeeping staff, knew or should have known Plaintiff was a victim of sex trafficking at the hotel through its opportunities to observe Plaintiff and the rooms in which she was repeatedly victimized.

69. Despite these indicators, Defendant took no steps to investigate, report, or prevent this conduct. WoodSpring staff failed to notify law enforcement, refused to conduct wellness checks, and actively avoided interference with the trafficking operation. In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff. Further, on information and belief, Defendant reviewed hotel performance data, room occupancy data, and profitability data in connection with managing and/or operating the hotel premises.

70. During the period Plaintiff was sex trafficked, other women and minors were also sex trafficked at the hotel premises. Plaintiff believes some were trafficked by Plaintiff's traffickers and others by other traffickers. Many such victims displayed the signs described in the foregoing paragraph.

71. Plaintiff has no control over money and was required to turn over money to her traffickers at the hotel premises.

72. As described in the foregoing paragraphs, Defendant knew or should have known that Plaintiff was a victim of sex trafficking who was being sex trafficked at the WoodSpring, over which Defendant exercised control. Defendant negligently failed to respond, and as a result, in continuous victimization of Plaintiff remains unchecked.

73. Defendant knew or should have known that the hotel premises were utilized for sex trafficking and other crimes. When Plaintiff was sex trafficked at the hotel, she witnessed other young women and minors being trafficked for sex at the hotel. As a result, a large number of buyers frequented the hotel each day to pay for commercial sex.

74. Plaintiff's traffickers chose to traffic Plaintiff at the WoodSpring because of the hotel's sordid reputation as a hub of sex trafficking and other sex crimes. Defendant knew or should have known that the WoodSpring and its approaches were rife with crime, including sex trafficking, before, during, and

after Plaintiff's sex trafficking. Defendant nonetheless permitted Plaintiff to be sex trafficked at the WoodSpring.

75.     Defendant knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's sex trafficking at the WoodSpring. Specifically, and based on publicly available information and police reports, including Defendant's franchisor's several public statements over the past ten years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels, and claiming they are committed to fighting against it. Defendant knew or should have known of such sex crimes, among others, occurring on WoodSpring's premises and approaches prior to Plaintiff's sex trafficking.

76.     On information and belief, Defendant has been named in numerous civil lawsuits arising out of sex trafficking and drug use at their premises, including during the time of trafficking of Plaintiff in this case, which puts Defendant on further notice of the sex trafficking.

77.     Defendant did not act to address or combat this gruesome history prior to Plaintiff's trafficking. Indeed, Defendant continued to allow, condone, and permit sex trafficking and other sex crimes at the hotel after Plaintiff was trafficked for sex at the WoodSpring. Specifically, and based on publicly available information and police reports, Defendant knew or should have known of such

sex crimes, arrests, and incidents, among others, occurring on WoodSpring's premises and approaches after Plaintiff was sex trafficked at the WoodSpring with another victim.

78.    On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the WoodSpring. Defendants managed, controlled, and monitored, showing the pervasiveness of sex trafficking before and after Plaintiff was trafficked.

79.    Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that 92% of the calls it received involving hotels and motels reported sex trafficking, and another 2% reported a combination of sex and labor trafficking.[6] A 2017 Cornell University study found that 63% of trafficking incidents occurred in hotels, and approximately 92% of hotel respondents reported being moderately to strongly familiar with sex trafficking, with an average familiarity score of 4.105 on a 5-point scale.[7]

80.    Defendant knew or should have known that during the relevant period, the Department of Homeland Security ("DHS") published guidelines to

---

[6] Human Trafficking and the Hotel Industry, Polaris Project, Retrieved September, 5th 2025, from https://polarisproject.org/wp-content/uploads/2019/09/human-trafficking-hotel-industry-recommendations.pdf

[7] Giovanna L. C. Cavagnaro. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Retrieved September, 5th 2025, from https://ecommons.cornell.edu/server/api/core/bitstreams/8aa2e886-f105-4927-a6aa-899c35f39ab4/content

help hotels and motels detect and stop human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. persons who lack freedom of movement or are constantly monitored;

c. persons who have no control over or possession of money or ID;

d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g. extended stay with few or no personal possessions in the room; h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

h. the same person reserves multiple rooms;

    i.   a room is rented hourly, less than a day, or for an atypical extended stay;

    j.   attempts to sell items to or beg from patrons or staff;

    k.  cars in the parking lot regularly parked backward, so the license plates are not visible; m. loitering and solicitation of male patrons;

    l.   waiting at a table or bar and picked up by a male (trafficker or customer) o. persons asking staff or patrons for food or money; and

    m. persons taking cash or receipts left on tables.[8]

81.    Defendant knew or should have known that in 2018, the National Human Trafficking Hotline ranked Florida as 4th in the nation for human trafficking, making it reasonable to expect any involved party to have been aware of these facts during that period.[9]

82.    By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the WoodSpring generally, and in response to Plaintiff's sex trafficking at the WoodSpring specifically, Defendant's

---

[8] "No Room For Trafficking Member Resource Guide," American Hotel & Lodging Association (AHLA), which incorporates DHS Blue Campaign materials and training protocols. Retrieved September, 5th 2025, from https://www.ahla.com/sites/default/files/NRFT-%20Member%20Resource%20Guide.pdf; DHS Blue Campaign official resource downloads and indicator cards for hospitality: Retrieved September, 5th 2025, from https://www.dhs.gov/blue-campaign/request-materials

[9] Federal Human Trafficking Report. State Summary: FLORIDA. Retrieved September, 5th 2025, from https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Human-Trafficking-Report-FL.pdf

employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the WoodSpring.

83.   Additionally, under Florida law, Defendant had a duty to exercise ordinary care to keep their hotel's premises in a reasonably safe condition and not to expose invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions. Defendant also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. Likewise, Defendant had other duties described further herein, including the duty to train hotel personnel, supervise hotel personnel, monitor the property, secure the property, remediate the property in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

84.   Defendant breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff, and benefited from the sex trafficking venture by receiving consistent revenue from room rentals paid by traffickers or their clients over a period of several months. These payments were often made in advance and in cash or via third-party credit cards as explained above paragraphs.

85.   Defendant acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the premises to combat the well-

known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the premises on the pervasiveness of sex trafficking in the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the premises to prevent sex trafficking at the hotel, by allowing rooms at the premises to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the premises about which Defendant had actual and/or constructive knowledge. Through such actions and omissions, among others, the Defendant allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

86.     Defendant's policies and practices, whether formal or informal, made it a safe haven for traffickers to operate with impunity, and the company failed to adopt or enforce any anti-trafficking measures, training, or reporting protocols consistent with industry standards.

87.     As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm,

including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## C. *ALLEGATIONS AGAINST DEFENDANT SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN*

88.     During the relevant time period from approximately June to July 2019, Plaintiff was subjected to repeated acts of sex trafficking at the Red Roof Inn located at 13000 N Cleveland Ave North Fort Myers FL 33903 (the "Red Roof" and "premises"), which was owned, operated, managed, maintained, and/or controlled by Defendant Shivam Sundaram Hotels LLC (hereinafter "Defendant").

89.     During her stay at the Red Roof, Plaintiff was under the coercive control of her trafficker, Elijah Underwood a/k/a "Big-E" ("Big-E") (her "trafficker"). Big-E used a combination of physical threats, psychological manipulation, fraud, and the administration of addictive drugs, including cocaine, to maintain control over Plaintiff and to compel her to engage in commercial sex acts within the Red Roof premises. Plaintiff was not free to leave and remained under constant threat and influence during her stay.

90.     At all times relevant hereto, Plaintiff was trafficked out of Room 149 at the Red Roof, which was either registered in Big-E's name or accessed with the assistance of Red Roof staff. Plaintiff was contacted by a Red Roof employee known to her as "Daniel," who provided her trafficker with a room key in

exchange for oral sex, thereby bypassing registration and payment procedures and directly facilitating Plaintiff's trafficking.

91.    Plaintiff was compelled by her trafficker to perform commercial sex acts with "dates" who were arranged by her trafficker. Red Roof staff, including Daniel, either knew or should have known about the ongoing trafficking given the circumstances, including their direct participation and facilitation of the activity.

92.    At all relevant times, Defendant supervised, directed, and controlled its employees, agents, and representatives at the premises, including Daniel, and was therefore vicariously responsible for their actions of its employees in facilitating Plaintiff's trafficking during the relevant period.

93.    Defendant, by and through its employees, agents, and management and/or representatives, and/or as an owner, operator, maintainer, manager, and/or as a franchisee benefited from the trafficking of Plaintiff by collecting room rental fees, whether directly through trafficking-related payments or indirectly through increased occupancy and cash flow associated with high-turnover use of rooms for commercial sex activity. Defendant also benefited by avoiding expenses and administrative burdens that would have resulted from taking reasonable steps to report or stop trafficking. On information and belief, Defendant's staff also sold items such as condoms to traffickers and buyers, further profiting from trafficking-related activities.

94.     During at least part of the time Plaintiff was sex trafficked at the Red Roof, Plaintiff's trafficker sold drugs out of the room/s in which Plaintiff was sex trafficked and/or previously trafficked other women and minors out of the same room/s in which Plaintiff was sex trafficked. As such, Plaintiff's trafficker was familiar to Defendant employees, agents, and/or representatives at the time they trafficked Plaintiff for sex at the Red Roof.

95.     On information and belief, at least one of Defendant's employees, agents, and/or representatives who worked at the front desk at the Red Roof bought drugs from Plaintiff's trafficker.

96.     On or about July 2, 2019, when Plaintiff was forced to perform commercial sex acts with a client named Ronnie Hankey a/k/a "Tony," when they were confronted by the Lee County Sheriff's Office. Plaintiff informed the deputies that she knew the front desk clerk "Daniel," who had given the room key. Plaintiff further disclosed that she had performed oral sex on Daniel in exchange for lodging under force threat and being compelled by her trafficker.

97.     Despite law enforcement's attempts to contact Daniel to confirm this information, he was unreachable. Plaintiff reiterated to law enforcement that Daniel had facilitated her access to the room and that he had arranged for her stay without registration, in exchange for sexual favors.

98.     Plaintiff later discovered that the room in which she had been staying was listed as "out of service" by the Red Roof. Nevertheless, this room was used to facilitate sex trafficking with the knowledge, involvement, and assistance of the Red Roof staff, including Daniel.

99.     Plaintiff, Big-E, and Tony were ultimately arrested and charged with drug possession and possession of drug paraphernalia. Despite clear signs of trafficking, no action was taken by the Red Roof staff to protect the Plaintiff.

100.    At all times relevant hereto, Defendant, by and through its employees, agents, and management and/or representatives, and/or as an owner, operator, maintainer, manager, and/or as a franchisee controls over the Red Roof premises where Plaintiff was trafficked. Defendant was responsible for hiring, training, and supervising its employees, including front desk clerks such as "Daniel," as well as for setting and enforcing policies and practices regarding guest safety and illegal activities on the premises.

101.    Defendant, by and through its employees, agents, and management and/or representatives, directly participated in this trafficking venture by continuing to rent a room to Plaintiff's trafficker and allowing them to conduct commercial sex transactions on the Red Roof despite obvious and repeated signs of sex trafficking during the relevant period.

102. On information and belief, Defendant's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the hotel premises by, among other things, acting as lookouts for Plaintiff's trafficker and informing the trafficker of police activity at the hotel as well as warning Plaintiff's trafficker about guest complaints and high visitor traffic drawing unwanted attention.

103. On information and belief, Plaintiff's trafficker paid Defendant's employees, agents, and/or representatives to act as lookouts and notify the trafficker of police activity at the hotel, among other things.

104. Defendant had actual and/or constructive knowledge that sex trafficking was occurring on its premises, including in the room where Plaintiff was trafficked. Defendant's knowledge is evidenced by numerous, persistent, and well-known indicators of trafficking activity that were open, notorious, and routinely observed by hotel staff, management, and security personnel. These red flags included, but were not limited to:

    a. High volume of foot traffic to and from Room 149 and other rooms at all hours of the day and night;

    b. Short stays by multiple male visitors who did not check in through the front desk;

c. Visible signs of drug use and paraphernalia, including odor, discarded needles, and excessive noise complaints;

d. Security footage and front desk activity revealing irregular and suspicious guest interactions, including bypassing the standard check-in process;

e. Direct participation by Red Roof employees, including Daniel, in sexually exploitative conduct and facilitation of Plaintiff's trafficking;

f. Plaintiff's physical appearance, including signs of fear, exhaustion, bruising, or being under the influence, which should have raised an alarm.

105.    In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff. Further, on information and belief, Defendant reviewed hotel performance data, room occupancy data, and profitability data in connection with managing and/or operating the hotel premises.

106.    Plaintiff has no control over money and was required to turn over money to her trafficker at the hotel premises.

107.    As described in the foregoing paragraphs, Defendant knew or should have known that Plaintiff was a victim of sex trafficking who was being sex trafficked at the Red Roof, over which Defendant exercised control. Defendant

negligently failed to respond, and as a result, in continuous victimization of Plaintiff remains unchecked.

108. Defendant knew or should have known that the hotel premises were utilized for sex trafficking and other crimes. When Plaintiff was sex trafficked at the hotel, she witnessed other young women and minors being trafficked for sex at the hotel. As a result, a large number of buyers frequented the hotel each day to pay for commercial sex.

109. Plaintiff's trafficker chose to traffic Plaintiff at the Red Roof because of the hotel's sordid reputation as a hub of sex trafficking and other sex crimes. Defendant knew or should have known that the Red Roof and its approaches were rife with crime, including sex trafficking, before, during, and after Plaintiff's sex trafficking. Defendant nonetheless permitted Plaintiff to be sex trafficked at the Red Roof.

110. Defendant knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's sex trafficking at the Red Roof. Specifically, and based on publicly available information and police reports, including Defendant's franchisor's several public statements over the past ten years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels, and claiming they are committed to fighting against it. Defendant knew or should have known of such sex crimes, among others,

occurring on Red Roof's premises and approaches prior to Plaintiff's sex trafficking.

111. On information and belief, Defendant has been named in numerous civil lawsuits arising out of sex trafficking and drug use at their premises, including during the time of trafficking of Plaintiff in this case, which puts Defendant on further notice of the sex trafficking.[10]

112. Defendant did not act to address or combat this gruesome history prior to Plaintiff's trafficking. Indeed, Defendant continued to allow, condone, and permit sex trafficking and other sex crimes at the hotel after Plaintiff was trafficked for sex at the Red Roof. Specifically, and based on publicly available information and police reports, Defendant knew or should have known of such sex crimes,

---

[10] Red Roof Inn, one of the largest budget hotel chains in the U.S., faces at least 42 federal lawsuits from hundreds of sex trafficking victims. The lawsuits span 39 states and involve at least 117 Red Roof Inn locations. Victims, including minors, allege traffickers openly used hotel rooms for commercial sex while staff and management ignored obvious signs of abuse. Reports describe frequent violence, drug activity, and victims being forced into sex work, often in view of employees. In some cases, staff joked about "pimps and hos," prioritized room sales over safety, and received no training to identify or prevent trafficking. Customer reviews, former employees, and internal communications corroborate widespread prostitution and corporate indifference. Red Roof only introduced limited anti-trafficking training years after the problem had become pervasive.
The shocking scale of sex trafficking allegations at Red Roof Inn hotels across the United States. Retrieved September, 5th 2025, from https://www.independent.co.uk/news/world/americas/hotel-sex-trafficking-victims-allegations-b2578905.html

arrests, and incidents, among others, occurring on Red Roof's premises and approaches after Plaintiff was sex trafficked at the Red Roof with another victim.

113.    On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the Red Roof. Defendants managed, controlled, and monitored, showing the pervasiveness of sex trafficking before and after Plaintiff was trafficked.

114.    Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that 92% of the calls it received involving hotels and motels reported sex trafficking, and another 2% reported a combination of sex and labor trafficking.[11] A 2017 Cornell University study found that 63% of trafficking incidents occurred in hotels, and approximately 92% of hotel respondents reported being moderately to strongly familiar with sex trafficking, with an average familiarity score of 4.105 on a 5-point scale.[12]

115.    Defendant knew or should have known that during the relevant period, the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and stop human trafficking. DHS's guidelines

---

[11] Human Trafficking and the Hotel Industry, Polaris Project, Retrieved September, 5th 2025, from https://polarisproject.org/wp-content/uploads/2019/09/human-trafficking-hotel-industry-recommendations.pdf

[12] Giovanna L. C. Cavagnaro. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Retrieved September, 5th 2025, from https://ecommons.cornell.edu/server/api/core/bitstreams/8aa2e886-f105-4927-a6aa-899c35f39ab4/content

instruct housekeeping, maintenance, front desk, and security, among other hotel

personnel, to be vigilant in looking for signs of human trafficking at hotels and

motels, such as:

    a.  persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b.  persons who lack freedom of movement or are constantly monitored;

    c.  persons who have no control over or possession of money or ID;

    d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

    e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

    f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

    g.  extended stay with few or no personal possessions in the room; h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

    h.  the same person reserves multiple rooms;

    i.  a room is rented hourly, less than a day, or for an atypical extended stay;

    j.  attempts to sell items to or beg from patrons or staff;

    k.  cars in the parking lot regularly parked backward, so the license plates are not visible; m. loitering and solicitation of male patrons;

    l.  waiting at a table or bar and picked up by a male (trafficker or customer) o. persons asking staff or patrons for food or money; and

    m. persons taking cash or receipts left on tables.[13]

116.   Defendant knew or should have known that in 2018, the National Human Trafficking Hotline ranked Florida as 4th in the nation for human trafficking, making it reasonable to expect any involved party to have been aware of these facts during that period.[14]

117.   By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the Red Roof generally, and in response to Plaintiff's sex trafficking at the Red Roof specifically, Defendant's employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the Red Roof.

---

[13] "No Room For Trafficking Member Resource Guide," American Hotel & Lodging Association (AHLA), which incorporates DHS Blue Campaign materials and training protocols. Retrieved September, 5th 2025, from https://www.ahla.com/sites/default/files/NRFT-%20Member%20Resource%20Guide.pdf; DHS Blue Campaign official resource downloads and indicator cards for hospitality: Retrieved September, 5th 2025, from https://www.dhs.gov/blue-campaign/request-materials

[14] Federal Human Trafficking Report. State Summary: FLORIDA. Retrieved September, 5th 2025, from https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Human-Trafficking-Report-FL.pdf

118. Additionally, under Florida law, Defendant had a duty to exercise ordinary care to keep their hotel's premises in a reasonably safe condition and not to expose invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions. Defendant also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. Likewise, Defendant had other duties described further herein, including the duty to train hotel personnel, supervise hotel personnel, monitor the property, secure the property, remediate the property in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

119. Defendant breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff, and benefited from the sex trafficking venture by receiving consistent revenue from room rentals paid by trafficker or their clients over a period of several months. These payments were often made in advance and in cash or via third-party credit cards as explained above paragraphs.

120. Defendant acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the premises to combat the well-known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the premises on the pervasiveness of sex

trafficking in the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the premises to prevent sex trafficking at the hotel, by allowing rooms at the premises to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the premises about which Defendant had actual and/or constructive knowledge. Through such actions and omissions, among others, the Defendant allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

121. Defendant's policies and practices, whether formal or informal, made it a safe haven for traffickers to operate with impunity, and the company failed to adopt or enforce any anti-trafficking measures, training, or reporting protocols consistent with industry standards.

122. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

### D. *ALLEGATIONS AGAINST DEFENDANT C S COLONIAL CT LLC D/B/A CANDLEWOOD SUITES*

123.    During all the relevant time from October to November 2019, Plaintiff was subjected to repeated acts of sex trafficking at the Candlewood Suites located at 3626 Colonial Court, Fort Myers, Florida 33913 (the "Candlewood" and "premises"), which was owned, operated, managed, maintained, and/or controlled by Defendant C S Colonial CT LLC (hereinafter "Defendant").

124.    Plaintiff was harbored and exploited within Candlewood properties owned, operated, maintained, managed, franchised, and licensed by Defendant. During her stay at the Candlewood, Plaintiff was under the coercive control of one or more traffickers who exercised domination over her through a combination of physical threats, psychological manipulation, coercion, and the administration of addictive drugs, including cocaine. These traffickers compelled Plaintiff to engage in numerous commercial sex acts within the Candlewood, exploiting her vulnerability and inability to leave freely.

125.    Plaintiff's sex traffickers carried weapons and operated openly and brazenly on Candlewood's premises, common areas, and approaches.

126.    Plaintiff initially moved into the Candlewood with another woman, Kelly Henderson, in or around October 2019. Although they initially attempted to live independently, both were quickly discovered by opportunistic traffickers who frequented the Candlewood, entering and exiting the premises at will to collect

funds, assert control, and monitor Plaintiff and Kelly. The Candlewood became a well-known location for such exploitative conduct.

127. Plaintiff and Kelly resided in Suite 201, where much of the trafficking activity occurred. The suite was visibly occupied for extended periods by non-registered guests and was associated with suspicious activity indicative of trafficking, including the presence of multiple unknown male visitors, irregular cash transactions, and loitering by individuals unaffiliated with legitimate hotel business.

128. On information and belief, the Candlewood's day manager was aware of Plaintiff's and Kelly's presence and was directly involved in facilitating their stay. Specifically, the manager engaged in a quid pro quo arrangement in which she allowed Plaintiff and Kelly to remain in the room without charge on multiple occasions in exchange for the opportunity to drive Kelly's white Mercedes vehicle. This arrangement bypassed hotel protocols and provided cover for trafficking activity.

129. At all times relevant hereto, Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the premises, giving Defendant specific and direct knowledge of crimes and sex trafficking at the Candlewood during the relevant period.

130. On information and belief, Defendant financially benefited from the trafficking of Plaintiff by collecting room rental fees, whether directly through trafficking-related payments or indirectly through increased occupancy and cash flow associated with high-turnover use of rooms for commercial sex activity. Defendant also benefited by avoiding expenses and administrative burdens that would have resulted from taking reasonable steps to report or stop trafficking.

131. Defendant's conduct, including that of its agents, employees, and management, constituted participation in a venture in violation of the TVPRA, 18 U.S.C. § 1595, by knowingly or recklessly disregarding signs of trafficking, facilitating access to rooms for traffickers and sex buyers, and profiting from the continued exploitation of Plaintiff.

132. Despite Plaintiff's visible drug use, lack of legitimate travel or business purpose, and frequent visits by male individuals for short periods, the Candlewood staff and management took no meaningful action to investigate or intervene. On the contrary, Candlewood staff, particularly the day manager, affirmatively participated by providing lodging, shielding the occupants from scrutiny, and permitting continued access to the room without lawful registration or payment.

133. On or about October 28, 2019, a routine lodging inspection was conducted at Candlewood, shows that the hotel's 80 units, required a follow-up

inspection because a high-priority violation, lack of a Certificate of Balcony remained unresolved after warnings, pose an immediate public threat, the manager had not yet completed the required certification.

134. On information and belief, Defendant permitted extended occupancy without proper guest identification and allowed suspicious and unlawful conduct to occur unchecked.

135. On information and belief, Defendant turned a blind eye to safety and security issues at the hotel when revenue was satisfactory, even when Defendant knew or should have known part of the profits were derived from sex trafficking ventures victimizing Plaintiff and other women and minor victims.

136. Defendant had actual and/or constructive knowledge that sex trafficking was occurring on its premises, including in rooms where Plaintiff was trafficked. Defendant's knowledge is evidenced by numerous, persistent, and well-known indicators of trafficking activity that were open, notorious, and routinely observed by hotel staff, management, and security personnel.

137. Defendant's conduct, including acts and omissions by its employees and management, constitutes knowing and reckless disregard for the rights and safety of Plaintiff and other victims of trafficking. Defendant's indifference to trafficking at the Candlewood enabled the continued exploitation of Plaintiff and facilitated the criminal acts of her traffickers.

138.    During at least part of the time Plaintiff was sex trafficked at the Candlewood, Plaintiff's traffickers also trafficked other women and minors out of the same room/s in which Plaintiff was sex trafficked. As such, Plaintiff's traffickers were familiar to Defendant employees, agents, and/or representatives at the time they trafficked Plaintiff for sex at the Candlewood. In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff. Further, on information and belief, Defendant reviewed hotel performance data, room occupancy data, and profitability data in connection with managing and/or operating the hotel premises.

139.    Plaintiff has no control over money and was required to turn over money to her trafficker at the hotel premises.

140.    As described in the foregoing paragraphs, Defendant knew or should have known that Plaintiff was a victim of sex trafficking who was being sex trafficked at the Candlewood, over which Defendant exercised control. Defendant negligently failed to respond, and as a result, in continuous victimization of Plaintiff remains unchecked.

141.    Defendant knew or should have known that the hotel premises were utilized for sex trafficking and other crimes. When Plaintiff was sex trafficked at the hotel, she witnessed other young women and minors being trafficked for sex

at the hotel. As a result, a large number of buyers frequented the hotel each day to pay for commercial sex.

142.   Plaintiff's trafficker chose to traffic Plaintiff at the Candlewood because of the hotel's sordid reputation as a hub of sex trafficking and other sex crimes. Defendant knew or should have known that Candlewood and its approaches were rife with crime, including sex trafficking, before, during, and after Plaintiff's sex trafficking. Defendant nonetheless permitted Plaintiff to be sex trafficked at the Candlewood.

143.   Defendant knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's sex trafficking at the Candlewood. Specifically, and based on publicly available information and police reports, including Defendant's franchisor's several public statements over the past ten years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels, and claiming they are committed to fighting against it. Defendant knew or should have known of such sex crimes, among others, occurring on Candlewood's premises and approaches prior to Plaintiff's sex trafficking.

144.   On information and belief, Defendant has been named in numerous civil lawsuits arising out of sex trafficking and drug use at their premises,

including during the time of trafficking of Plaintiff in this case, which puts Defendant on further notice of the sex trafficking.

145.   Defendant did not act to address or combat this gruesome history prior to Plaintiff's trafficking. Indeed, Defendant continued to allow, condone, and permit sex trafficking and other sex crimes at the hotel after Plaintiff was trafficked for sex at the Candlewood. Specifically, and based on publicly available information and police reports, Defendant knew or should have known of such sex crimes, arrests, and incidents, among others, occurring on Candlewood's premises and approaches after Plaintiff was sex trafficked at the Candlewood with another victim.

146.   On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the Candlewood. Defendants managed, controlled, and monitored, showing the pervasiveness of sex trafficking before and after Plaintiff was trafficked.

147.   Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that 92% of the calls it received involving hotels and motels reported sex trafficking, and another 2% reported a combination of sex and labor trafficking.[15] A 2017 Cornell University study found that 63% of

---

[15] Human Trafficking and the Hotel Industry, Polaris Project, Retrieved September, 5th 2025, from https://polarisproject.org/wp-content/uploads/2019/09/human-trafficking-hotel-industry-recommendations.pdf

trafficking incidents occurred in hotels, and approximately 92% of hotel respondents reported being moderately to strongly familiar with sex trafficking, with an average familiarity score of 4.105 on a 5-point scale.[16]

148.    Defendant knew or should have known that during the relevant period, the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and stop human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

    a.  persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b.  persons who lack freedom of movement or are constantly monitored;

    c.  persons who have no control over or possession of money or ID;

    d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

---

[16] Giovanna L. C. Cavagnaro. Sex Trafficking: The Hospitality Industry's Role and Responsibility.    Retrieved    September,    5th    2025,    from https://ecommons.cornell.edu/server/api/core/bitstreams/8aa2e886-f105-4927-a6aa-899c35f39ab4/content

e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g.  extended stay with few or no personal possessions in the room; h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

h.  the same person reserves multiple rooms;

i.  a room is rented hourly, less than a day, or for an atypical extended stay;

j.  attempts to sell items to or beg from patrons or staff;

k.  cars in the parking lot regularly parked backward, so the license plates are not visible; m. loitering and solicitation of male patrons;

l.  waiting at a table or bar and picked up by a male (trafficker or customer) o. persons asking staff or patrons for food or money; and

m.  persons taking cash or receipts left on tables.[17]

---

[17] "No Room For Trafficking Member Resource Guide," American Hotel & Lodging Association (AHLA), which incorporates DHS Blue Campaign materials and training protocols. Retrieved September, 5th 2025, from https://www.ahla.com/sites/default/files/NRFT-%20Member%20Resource%20Guide.pdf; DHS Blue Campaign official resource downloads and indicator cards for hospitality: Retrieved September, 5th 2025, from https://www.dhs.gov/blue-campaign/request-materials

149.   Defendant knew or should have known that in 2018, the National Human Trafficking Hotline ranked Florida as 4th in the nation for human trafficking, making it reasonable to expect any involved party to have been aware of these facts during that period.[18]

150.   By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the Candlewood generally, and in response to Plaintiff's sex trafficking at the Candlewood specifically, Defendant's employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the Candlewood.

151.   Additionally, under Florida law, Defendant had a duty to exercise ordinary care to keep their hotel's premises in a reasonably safe condition and not to expose invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions. Defendant also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. Likewise, Defendant had other duties described further herein, including the duty to train hotel personnel, supervise hotel personnel, monitor the property, secure the property, remediate the property

---

[18] Federal Human Trafficking Report. State Summary: FLORIDA. Retrieved September, 5th 2025, from https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Human-Trafficking-Report-FL.pdf

in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

152.   Defendant breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff, and benefited from the sex trafficking venture by receiving consistent revenue from room rentals paid by trafficker or their clients over a period of several months. These payments were often made in advance and in cash or via third-party credit cards as explained above paragraphs.

153.   Defendant acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the premises to combat the well-known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the premises on the pervasiveness of sex trafficking in the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the premises to prevent sex trafficking at the hotel, by allowing rooms at the premises to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the premises about which Defendant had actual and/or constructive knowledge. Through such actions and omissions, among others, the Defendant

allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

154.    Defendant's policies and practices, whether formal or informal, made it a safe haven for traffickers to operate with impunity, and the company failed to adopt or enforce any anti-trafficking measures, training, or reporting protocols consistent with industry standards.

155.    As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

E. *ALLEGATIONS AGAINST DEFENDANT R&M REAL ESTATE COMPANY INC. D/B/A COMFORT INN & EXECUTIVE SUITES*

156.    During the relevant time period in or about May 15th 2023, Plaintiff was subjected to acts of sex trafficking at the Comfort Inn & Executive Suites ("Comfort"), located at 3860 Tollgate Blvd, Naples, Florida, 34114 (the "Comfort" and "premises"), which was owned, operated, managed, maintained and/or controlled by Defendant R&M Real Estate Company Inc. (hereinafter "Defendant").

157.    Plaintiff was lured to the Comfort under false pretenses by a trafficker, John King, a Haitian group member, who arranged transportation via

Uber to the hotel. Upon arriving at the Comfort, Plaintiff encountered not only her trafficker but also at least two other unknown adult males who were present in the hotel room. These men immediately began discussing plans to invite other women to "party" and suggested they would all travel to Miami the following day.

158. Shortly thereafter, Plaintiff was coerced into remaining at the Comfort against her will. Although she requested to leave, the trafficker insisted that everything she needed would be provided for her. She was given a substance identified as cocaine, which she smoked. Plaintiff believes the substance was laced or adulterated, as she became physically incapacitated and experienced severe breathing difficulties shortly after consuming it.

159. While incapacitated and in a vulnerable state, Plaintiff was taken to the bathroom, and one of the younger men sexually abused Plaintiff while she was alone in the bathroom. Following the assault, she locked herself in the bathroom out of fear for her safety.

160. Plaintiff remained trapped in the bathroom until she believed the room had quieted down. At that point, she escaped, retrieved her belongings, and ran to the Comfort front desk.

161. Despite informing hotel staff that she was in danger, had been assaulted and/or forces, coerced, and threat by her trafficker into sex trafficking,

and needed to charge her phone to call for help, staff at the Comfort refused to assist her. She was denied access to the lobby and told she could not remain on the premises because she was not a registered guest, despite her repeated pleas and clear signs of distress.

162.    Plaintiff eventually located an outdoor outlet, charged her phone, and contacted her human trafficking advocate, who began traveling from Fort Myers to help Plaintiff. While waiting, Plaintiff again sought shelter in the lobby but was turned away by Comfort staff, who still refused to allow her access to a safe area.

163.    Fearing for her life but also concerned that her advocate would not be able to find her if she left the property, Plaintiff ran to a nearby restaurant and hid in the restroom while charging her phone. Upon her advocate's reaching, Plaintiff exited the restaurant. As she did, one of the men from the Comfort exited the building, wielding a firearm and yelling threats, including "I'm going to kill you."

164.    Her advocate arrived on the scene and secured the Plaintiff in her vehicle. The two drove away from the Comfort and contacted the Collier County Human Trafficking Unit to report the incident. Plaintiff was then transported to the Hospital for medical treatment.

165. At all times relevant hereto, Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the premises, giving

Defendant specific and direct knowledge of crimes and sex trafficking at the Comfort during the relevant period.

166.   Plaintiff's sex traffickers carried weapons and operated openly and brazenly on Comfort's premises, common areas, rooms, balcony, and approaches.

167.   Defendant, by and through its employees, agents, and management and/or representatives, and/or as an owner, operator, maintainer, manager, and/or as a franchisee directly benefited for this trafficking venture by renting rooms to Plaintiff's traffickers or their Johns and allowing them to conduct commercial sex transactions on the Comfort despite obvious and signs of sex trafficking during the relevant period and holds and monitors overall activities and management of the Comfort and increases its profits.

168.   The hotel room was allegedly registered in the name of John King. Plaintiff did not know the full identities of the other men present, including the younger man who assaulted her, and a third individual referred to as "Freddy," who stated he was "just the driver" and drove a white Dodge Charger. John King provided Plaintiff with the cocaine and facilitated the trafficking situation.

169.   Comfort staff demonstrated actual or constructive knowledge of the trafficking and Plaintiff's distress by refusing to assist her despite multiple requests, visible signs of trauma, and her expressed statements that she had been assaulted and was in danger. Staff failed to take any action to notify law

enforcement or intervene, and their inaction allowed the traffickers to threaten and attempt to recapture the Plaintiff.

170.    On information and belief, Defendant, through its agents, staff, and employees, knew or should have known that sex trafficking was occurring at its Comfort. The traffickers' activities included extended stays, paying in cash, high foot traffic to and from the rooms, male guests escorting vulnerable women to the rooms, use of multiple cell phones, and solicitation on online platforms — all red flags commonly associated with commercial sex trafficking that Defendant failed to investigate, monitor, or report.

171.    Despite these indicators, Defendant's employees and management failed to take any reasonable steps to intervene, report suspicious behavior, or prevent ongoing abuse on the property. Instead, Defendant provided the instrumentalities—rooms, electricity, privacy, and security—that enabled traffickers to operate with impunity and exploit Plaintiff.

172.    Plaintiff was physically incapacitated by a substance believed to be laced with cocaine, sexually abused in the Comfort room, and prevented from leaving. Her attempts to leave were met with coercion and restrictions, hallmarks of trafficking, yet the Hotel took no action even after she repeatedly informed front desk staff that she had been assaulted, was in danger, and needed help.

173.    Comfort staff refused Plaintiff's urgent requests to remain in the lobby or use power to charge her phone to contact her trafficking advocate, despite her visible distress and repeated disclosures of assault and danger. Instead, they ejected her from the premises, affirmatively denying her safety and shelter, and implicitly enabling the traffickers' continuing threats and pursuit.

174.    Shortly after being denied help, Plaintiff was actively threatened by one of the traffickers who exited the Comfort brandishing a firearm and shouting threats to kill her. This occurred in plain view outside the Comfort hotel, and hotel employees took no action to notify law enforcement or protect the victim, despite the clearly dangerous situation unfolding on their premises.

175.    On information and belief, Defendant maintains a reputation for no-questions-asked policies that attract traffickers seeking anonymity and lack of scrutiny.

176.    On information and belief, Defendant maintained control over the policies, training, and oversight of its premises, yet failed to implement reasonable anti-trafficking protocols despite industry knowledge and prior warnings of human trafficking occurring across its branded properties nationwide, including at this specific location.

177.    On information and belief, Defendant was on notice of prior incidents and complaints of suspected trafficking and illicit activity at the Comfort, yet

continued to ignore, conceal, or fail to report such occurrences. These omissions evidence a pattern of deliberate indifference and reckless disregard for the rights and safety of trafficking victims.

178.    Defendant's conduct aided and abetted the trafficking venture by providing substantial assistance to traffickers through the rental of rooms, provision of privacy and security, and failure to report or intervene when red flags were present. Defendant's premises functioned as a safe haven for the traffickers.

179.    On information and belief, Defendant turned a blind eye to safety and security issues at the hotel when revenue was satisfactory, even when Defendant knew or should have known part of the profits were derived from sex trafficking ventures victimizing Plaintiff and other women and/or minor victims.

180.    As described in the foregoing paragraphs, Defendant knew or should have known that Plaintiff was a victim of sex trafficking who was being sex trafficked at the Comfort, over which Defendant exercised control. Defendant negligently failed to respond, and as a result, in continuous victimization of Plaintiff remains unchecked.

181.    Defendant knew or should have known that the hotel premises were utilized for sex trafficking and other crimes. Plaintiff's trafficker chose to traffic Plaintiff at the Comfort because of the hotel's sordid reputation as a hub of sex trafficking and other sex crimes. Defendant knew or should have known that

Comfort and its approaches were rife with crime, including sex trafficking, before, during, and after Plaintiff's sex trafficking. Defendant nonetheless permitted Plaintiff to be sex trafficked at the Comfort.

182. Defendant knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's sex trafficking at the Comfort. Specifically, and based on publicly available information and police reports, including Defendant's franchisor's several public statements over the past ten years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels, and claiming they are committed to fighting against it. Defendant knew or should have known of such sex crimes, among others, occurring on Comfort's premises and approaches prior to Plaintiff's sex trafficking.

183. On information and belief, Defendant has been named in numerous civil lawsuits arising out of sex trafficking and drug use at their premises, including during the time of trafficking of Plaintiff in this case, which puts Defendant on further notice of the sex trafficking.[19]

---

[19] The Comfort Inn & Executive Suites at 3860 Tollgate Blvd, Naples, Florida, is named in a lawsuit alleging that the hotel's owners and management knowingly turned a blind eye to sex trafficking occurring on its premises. The plaintiffs, victims of trafficking in 2015 and 2016, claim the hotel ignored clear signs such as women in provocative clothing wandering hallways under the influence of drugs, frequent short-term male visitors, "do not disturb" signs on rooms for extended periods, and the presence of drug and sex paraphernalia. Despite these indicators, hotel staff allegedly failed to intervene, report,

184.    Defendant did not act to address or combat this gruesome history prior to Plaintiff's trafficking. Indeed, Defendant continued to allow, condone, and permit sex trafficking and other sex crimes at the hotel after Plaintiff was trafficked for sex at the Comfort. Specifically, and based on publicly available information and police reports, Defendant knew or should have known of such sex crimes, arrests, and incidents, among others, occurring on Comfort's premises and approaches after Plaintiff was sex trafficked at the Comfort with another victim.

185.    On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the with another victim.. Defendants managed, controlled, and monitored, showing the pervasiveness of sex trafficking before and after Plaintiff was trafficked.

186.    Defendant knew or should have known the following: The National Human Trafficking Hotline has reported that 92% of the calls it received involving hotels and motels reported sex trafficking, and another 2% reported a combination of sex and labor trafficking.[20] A 2017 Cornell University study found that 63% of

_____

or implement anti-trafficking policies or training. The lawsuit asserts that the hotel financially benefited from room rentals linked to commercial sex acts and that its indifference and willful blindness created an environment enabling traffickers to operate openly and exploit victims without interference, violating the Trafficking Victims Protection Reauthorization Act (TVPRA). Allen, J. et.al. (2020). Collier sex trafficking suit part of national effort. Retrieved September, 5th 2025, from https://naplesshelter.org/wp-content/uploads/2020/02/NaplesDailyNews_full.pdf

[20] Human Trafficking and the Hotel Industry, Polaris Project, Retrieved September, 5th 2025, from https://polarisproject.org/wp-content/uploads/2019/09/human-trafficking-hotel-industry-recommendations.pdf

trafficking incidents occurred in hotels, and approximately 92% of hotel respondents reported being moderately to strongly familiar with sex trafficking, with an average familiarity score of 4.105 on a 5-point scale.[21]

187.    Defendant knew or should have known that during the relevant period, the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and stop human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

    a.  persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b.  persons who lack freedom of movement or are constantly monitored;

    c.  persons who have no control over or possession of money or ID;

    d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

---

[21] Giovanna L. C. Cavagnaro. Sex Trafficking: The Hospitality Industry's Role and Responsibility.     Retrieved     September,     5th     2025,     from https://ecommons.cornell.edu/server/api/core/bitstreams/8aa2e886-f105-4927-a6aa-899c35f39ab4/content

e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g.  extended stay with few or no personal possessions in the room; h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

h.  the same person reserves multiple rooms;

i.  a room is rented hourly, less than a day, or for an atypical extended stay;

j.  attempts to sell items to or beg from patrons or staff;

k.  cars in the parking lot regularly parked backward, so the license plates are not visible; m. loitering and solicitation of male patrons;

l.  waiting at a table or bar and picked up by a male (trafficker or customer) o. persons asking staff or patrons for food or money; and

m. persons taking cash or receipts left on tables.[22]

---

[22] "No Room For Trafficking Member Resource Guide," American Hotel & Lodging Association (AHLA), which incorporates DHS Blue Campaign materials and training protocols. Retrieved September, 5th 2025, from https://www.ahla.com/sites/default/files/NRFT-%20Member%20Resource%20Guide.pdf; DHS Blue Campaign official resource downloads and indicator cards for hospitality: Retrieved September, 5th 2025, from https://www.dhs.gov/blue-campaign/request-materials

188.   Defendant knew or should have known that in 2018, the National Human Trafficking Hotline ranked Florida as 4th in the nation for human trafficking, making it reasonable to expect any involved party to have been aware of these facts during that period.[23]

189.   By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the Comfort generally, and in response to Plaintiff's sex trafficking at the Comfort specifically, Defendant's employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's sex trafficking at the Comfort.

190.   Additionally, under Florida law, Defendant had a duty to exercise ordinary care to keep their hotel's premises in a reasonably safe condition and not to expose invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions. Defendant also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. Likewise, Defendant had other duties described further herein, including the duty to train hotel personnel, supervise hotel personnel, monitor the property, secure the property, remediate the property

---

[23] Federal Human Trafficking Report. State Summary: FLORIDA. Retrieved September, 5th 2025, from https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Human-Trafficking-Report-FL.pdf

in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

191. Defendant breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff, and benefited from the sex trafficking venture by receiving consistent revenue from room rentals paid by trafficker or their clients over a period of several months. These payments were often made in advance and in cash or via third-party credit cards as explained above paragraphs.

192. Defendant acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the premises to combat the well-known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the premises on the pervasiveness of sex trafficking in the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the premises to prevent sex trafficking at the hotel, by allowing rooms at the premises to be rented to traffickers and pimps on a repeated and/or ongoing basis for open and obvious sexual exploitation of Plaintiff and/or other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the premises about which Defendant had actual and/or constructive knowledge. Through such actions and omissions, among others, the Defendant

allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

193. Defendant's policies and practices, whether formal or informal, made it a safe haven for traffickers to operate with impunity, and the company failed to adopt or enforce any anti-trafficking measures, training, or reporting protocols consistent with industry standards.

194. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## COUNT I
## CAUSE OF ACTION AGAINST DEFENDANT SAI SHYAM HOTELS LLC D/B/A MOTEL 6 FORT MYERS
### (Human Trafficking under 18 U.S.C. § 1595, § 1591)

195. Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 19-52 of this Complaint as if fully set forth herein.

196. Under 18 U.S.C. § 1595, § 1591, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

197.   Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591, and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

198.   From approximately May 2019 through August 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Motel 6 premises.

199.   During her stay at the Motel 6, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Motel 6.

200.   Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at a minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

201.   On information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

202.   Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags.

203.   Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

204.   Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

205.   Defendant's corporate structure and operational control over the Motel 6, including branding, policies, oversight, and profit sharing, render it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

206.   On information and belief, Plaintiff's trafficking was not an isolated event, and on information and belief, Defendant has previously allowed, facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

207.   As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm,

including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## COUNT II
## CAUSE OF ACTION AGAINST DEFENDANT SAI SHYAM HOTELS LLC D/B/A MOTEL 6 FORT MYERS
### (Negligence and Premises Liability)

208. Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 19-52 of this Complaint as if fully set forth herein.

209. At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

210. Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

211. Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

212.   Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

    a.   Failing to implement and enforce policies and procedures to prevent human trafficking on the premises;

    b.   Failing to train hotel staff and management to identify and properly respond to signs of sex trafficking, coercion, and abuse;

    c.   Failing to monitor the property for suspicious activity and known indicators of trafficking, including repeated short-term stays, frequent cash payments, male visitors at all hours, and distressed occupants;

    d.   Permitting traffickers and buyers to openly operate a commercial sex enterprise on the premises;

    e.   Turning a blind eye to known red flags and failing to intervene or report suspicious and criminal activity to law enforcement;

    f.   Allowing rooms to be used for illicit purposes over an extended period despite clear indications of ongoing exploitation.

213.   Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

214. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

215. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

216. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

## COUNT III
## CAUSE OF ACTION AGAINST DEFENDANT SAI SHYAM HOTELS LLC
## D/B/A MOTEL 6 FORT MYERS
### (Intentional Infliction of Emotional Distress)

217. Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 19-52 of this Complaint as if fully set forth herein.

218. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

219. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

220.   Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

221.   Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

222.   Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

223.   Despite actual and/or constructive knowledge of criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

224.   Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

225.  Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

226.  As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

**COUNT IV**
**CAUSE OF ACTION AGAINST DEFENDANT TIGER FORT MYERS**
**NORTHEAST LLC D/B/A WOODSPRING SUITES**
**(Human Trafficking under 18 U.S.C. § 1595, § 1591)**

227.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 53-87 of this Complaint as if fully set forth herein.

228.  Under 18 U.S.C. § 1595, § 1591, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

229.  Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591, and suffered harm as a direct result of Defendant's knowing and/or reckless

participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

230. From approximately May 2019 through August 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Woodspring.

231. During her stay at the Woodspring, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Woodspring.

232. Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at a minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

233. On information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

234. Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags.

235. Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to

recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

236. Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

237. Defendant's corporate structure and operational control over the Woodspring, including branding, policies, oversight, and profit sharing, render it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

238. On information and belief, Plaintiff's trafficking was not an isolated event, and on information and belief, Defendant has previously allowed, facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

239. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## COUNT V
## CAUSE OF ACTION AGAINST DEFENDANT TIGER FORT MYERS
## NORTHEAST LLC D/B/A WOODSPRING SUITES
### (Negligence and Premises Liability)

240.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 53-87 of this Complaint as if fully set forth herein.

241.    At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

242.    Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

243.    Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

244.    Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

a. Failing to implement and enforce policies and procedures to prevent human trafficking on the premises;

b. Failing to train hotel staff and management to identify and properly respond to signs of sex trafficking, coercion, and abuse;

c. Failing to monitor the property for suspicious activity and known indicators of trafficking, including repeated short-term stays, frequent cash payments, male visitors at all hours, and distressed occupants;

d. Permitting traffickers and buyers to openly operate a commercial sex enterprise on the premises;

e. Turning a blind eye to known red flags and failing to intervene or report suspicious and criminal activity to law enforcement;

f. Allowing rooms to be used for illicit purposes over an extended period despite clear indications of ongoing exploitation.

245. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

246. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

247.    Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

248.    As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

## COUNT VI
## CAUSE OF ACTION AGAINST DEFENDANT TIGER FORT MYERS NORTHEAST LLC D/B/A WOODSPRING SUITES
### (Intentional Infliction of Emotional Distress)

249.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 53-87 of this Complaint as if fully set forth herein.

250.    Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

251.    At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

252.    Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

253. Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

254. Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

255. Despite actual and/or constructive knowledge of criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

256. Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

257. Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

258.    As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

## COUNT VII
### CAUSE OF ACTION AGAINST DEFENDANT
### SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN
**(Human Trafficking under 18 U.S.C. § 1595, § 1591)**

259.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 88-122 of this Complaint as if fully set forth herein.

260.    Under 18 U.S.C. § 1595, § 1591, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

261.    Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591, and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

262.    From approximately June to July 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Red Roof.

263. During her stay at the Red Roof, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Red Roof.

264. Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at a minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

265. Defendant's employee, "Daniel," knowingly facilitated Plaintiff's sex trafficking by arranging access to a room without proper registration or payment, thereby participating in the trafficking venture and directly benefiting from the criminal conduct.

266. On information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

267. Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and unlawful conduct, such as:

    a. A high volume of non-registered male visitors to Room 149 and other rooms at all hours;

    b. Short-term stays and irregular check-in activity;

c.  Drug paraphernalia and noise complaints;

d.  Visible signs of Plaintiff's physical and emotional distress;

e.  Security footage and firsthand participation by hotel staff, including a front desk employee known as "Daniel," who provided Plaintiff and her trafficker access to the room in exchange for sexual acts.

268.  Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

269.  Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

270.  Defendant's corporate structure and operational control over the Red Roof, including branding, policies, oversight, and profit sharing, render it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

271.  On information and belief, Plaintiff's trafficking was not an isolated event, and on information and belief, Defendant has previously allowed,

facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

272.   As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

### COUNT VIII
### CAUSE OF ACTION AGAINST DEFENDANT SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN
### (Negligence and Premises Liability)

273.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 88-122 of this Complaint as if fully set forth herein.

274.   At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

275.   Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

276.   Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise

reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

277. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

a. Failing to properly hire, train, and supervise staff, including front desk personnel such as "Daniel";

b. Permitting staff to engage in or facilitate criminal conduct on the premises, including participation in sex trafficking;

c. Failing to implement and enforce adequate safety, security, and anti-trafficking policies and procedures;

d. Allowing unauthorized individuals to access rooms without registration or payment;

e. Failing to monitor security footage or respond to obvious red flags of trafficking, including excessive foot traffic, drug use, and short-term male visitors;

f. Failing to investigate or intervene upon observing Plaintiff's signs of distress, physical injuries, and coercion;

g. Ignoring or deliberately disregarding complaints, disturbances, and law enforcement involvement related to Plaintiff's stay.

278. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

279. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

280. Defendant's negligence created and maintained an environment where criminal conduct was allowed to flourish, which was a direct and foreseeable cause of the harm suffered by Plaintiff.

281. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

282. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

**COUNT XI**
**CAUSE OF ACTION AGAINST DEFENDANT SHIVAM SUNDARAM HOTELS LLC D/B/A RED ROOF INN**
**(Intentional Infliction of Emotional Distress)**

283. Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 88-122 of this Complaint as if fully set forth herein.

284.    Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

285.    At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

286.    Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

287.    At all relevant times, Plaintiff was a victim of sex trafficking that occurred on Defendant's premises with the knowledge, participation, facilitation, and/or deliberate indifference of Defendant's employees and agents, including a front desk employee identified as "Daniel."

288.    Defendant, through its agents and employees, engaged in extreme and outrageous conduct by knowingly allowing or participating in the commercial sexual exploitation of Plaintiff, a vulnerable and coerced individual who was under the control of her trafficker.

289.    Despite actual and/or constructive knowledge of the criminal activity occurring on its property, Defendant failed to intervene, report, or take action to

stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

290.   Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

291.   Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

292.   As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

## COUNT X
## CAUSE OF ACTION AGAINST DEFENDANT
## C S COLONIAL CT LLC D/B/A CANDLEWOOD SUITES
### (Human Trafficking under 18 U.S.C. § 1595, § 1591)

293.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 155-123 of this Complaint as if fully set forth herein.

294.   Under 18 U.S.C. § 1595, § 1591, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring

a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

295.    Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591, and suffered harm as a direct result of Defendant's knowing and/or reckless participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

296.    From approximately October to November 2019, Plaintiff was repeatedly trafficked for commercial sex acts at Defendant's Candlewood premises.

297.    During her stay at the Candlewood, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Candlewood.

298.    Defendant is liable under 18 U.S.C. § 1595(a) because it knowingly benefited, or, at a minimum, should have known it was benefiting, from a venture that engaged in sex trafficking in violation of 18 U.S.C. § 1591(a).

299.    On information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

300. Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags.

301. On information and belief, Defendant's manager knowingly allowed Plaintiff and her companion to remain in the room in exchange for non-monetary favors—specifically, for the opportunity to drive Kelly Henderson's white Mercedes—thereby bypassing hotel policies and facilitating trafficking activity.

302. The manager's participation in this quid pro quo arrangement and failure to require registration or payment for the room directly enabled Plaintiff's traffickers to conceal their activity and continue exploiting her.

303. Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious activity, and providing accommodation and services that made the hotel a haven for trafficking.

304. Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

305. Defendant's corporate structure and operational control over the Candlewood, including branding, policies, oversight, and profit sharing, renders it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

306. On information and belief, Plaintiff's trafficking was not an isolated event, and on information and belief, Defendant has previously allowed, facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

307. As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## COUNT XI
## CAUSE OF ACTION AGAINST DEFENDANT
## C S COLONIAL CT LLC D/B/A CANDLEWOOD SUITES
### (Negligence and Premises Liability)

308. Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 155-123 of this Complaint as if fully set forth herein.

309. At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

310. Defendant, as the operator and controller of the Candlewood, owed Plaintiff a duty to exercise reasonable care in the operation, supervision, and maintenance of the premises to ensure the safety and security of its guests, including the duty to protect guests from reasonably foreseeable criminal acts by third parties.

311. Defendant had actual or constructive knowledge that the Candlewood was being used as a venue for sex trafficking and that Plaintiff was at risk of or subject to repeated sexual exploitation and abuse by traffickers on the premises.

312. During her stay at the Candlewood, Plaintiff was trafficked and subjected to commercial sexual exploitation in Suite 201 by one or more individuals exercising coercive control over her through force, threats, drugs, and manipulation.

313. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

    a. Failing to implement and enforce policies and procedures to prevent human trafficking on the premises;

    b. Failing to train hotel staff and management to identify and properly respond to signs of sex trafficking, coercion, and abuse;

c. Failing to monitor the property for suspicious activity and known indicators of trafficking, including repeated short-term stays, frequent cash payments, male visitors at all hours, and distressed occupants;

d. Permitting traffickers and buyers to openly operate a commercial sex enterprise on the premises;

e. Failure to implement or enforce adequate guest screening or identification procedures;

f. Turning a blind eye to known red flags and failing to intervene or report suspicious and criminal activity to law enforcement;

g. Allowing rooms to be used for illicit purposes over an extended period despite clear indications of ongoing exploitation.

314. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

315. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

316. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

317. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

**COUNT XII**
**CAUSE OF ACTION AGAINST DEFENDANT**
**C S COLONIAL CT LLC D/B/A CANDLEWOOD SUITES**
**(Intentional Infliction of Emotional Distress)**

318. Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 155-123 of this Complaint as if fully set forth herein.

319. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

320. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

321. Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

322. During her stay at the Candlewood, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Candlewood.

323. Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

324. Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

325. Despite actual and/or constructive knowledge of criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

326. Defendant's conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's emotional well-being and personal safety.

327.   Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

328.   As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, and other psychological traumatic injuries and other damages determined at trial.

## COUNT XII
## CAUSE OF ACTION AGAINST DEFENDANT R&M REAL ESTATE COMPANY INC. D/B/A COMFORT INN & EXECUTIVE SUITES
### (Human Trafficking under 18 U.S.C. § 1595, § 1591)

329.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 156-194 of this Complaint as if fully set forth herein.

330.   Under 18 U.S.C. § 1595, § 1591, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation. A victim may bring a civil action against any entity that knowingly benefits from such trafficking while knowing or recklessly disregarding its occurrence.

331.   Plaintiff is a victim of sex trafficking, as defined in 18 U.S.C. § 1591, and suffered harm as a direct result of Defendant's knowing and/or reckless

participation in a venture that the Defendant knew or should have known engaged in sex trafficking.

332. On or about May 15th, 2023, Plaintiff was trafficked for commercial sex acts at Comfort premises.

333. During her stay at the Comfort, Plaintiff was under the coercive control of her trafficker, who used a combination of force, threats, fraud, coercion, and drugs to compel her to engage in commercial sex acts at the Comfort.

334. Plaintiff was trafficked, physically incapacitated, and sexually assaulted while being coerced to remain at the Comfort. Despite obvious signs of danger and repeated requests for help, hotel staff failed to intervene or notify authorities, instead ejecting Plaintiff from the premises and thereby exposing her to further danger, including armed threats from her traffickers.

335. Defendant knowingly or in reckless disregard participated in and/or financially benefited from a venture that it knew or should have known involved the sex trafficking of Plaintiff in violation of 18 U.S.C. §§ 1591(a), 1595(a).

336. On information and belief, Defendant, through its agents, employees, and management, knowingly benefited from participation in a sex trafficking venture by receiving substantial revenue from room rentals paid in cash or through third-party payments by Plaintiff's traffickers or commercial sex buyers, while ignoring numerous indicators of trafficking taking place on the premises.

337.    Defendant had actual and/or constructive knowledge or recklessly disregarded the occurrence of the trafficking and failed to take reasonable steps to prevent or report the unlawful conduct, despite clear red flags such as:

a.  Cash payments and extended stays;

b.  High foot traffic to and from rooms;

c.  The presence of unaccompanied, vulnerable women escorted by adult males;

d.  Use of multiple phones;

e.  Reports of visible drug use and prostitution activity;

f.  Online advertisements for commercial sex acts.

338.    Defendant's employees and agents were placed on actual notice of Plaintiff's trafficking through her own direct disclosures that she had been assaulted and was in danger, her visible distress, and her repeated pleas for assistance. Despite this, Comfort's staff affirmatively refused aid, denied her shelter, and turned her away from the lobby—actions that facilitated the traffickers' continuing control.

339.    Defendant facilitated, harbored, and turned a blind eye to the exploitation of Plaintiff and other victims by failing to train employees to recognize and respond to trafficking indicators, failing to report suspicious

activity, and providing accommodation and services that made the hotel a haven for trafficking.

340. Defendant's conduct constituted participation in a venture under 18 U.S.C. § 1591(a)(2), and it knowingly benefited from that participation as outlined in 18 U.S.C. § 1595(a), through revenue and room rental fees received directly from traffickers and buyers of commercial sex.

341. Defendant's conduct constituted knowing or reckless participation in the trafficking venture under 18 U.S.C. § 1595, including through:

342. Renting hotel rooms to traffickers;

343. Failing to act on reports and obvious signs of trafficking;

344. Ejecting Plaintiff while she was in visible distress and danger;

345. Refusing access to the lobby or charging outlets to call for help;

346. Providing no meaningful training or policies to staff to identify and respond to trafficking.

347. Defendant's corporate structure and operational control over the Comfort, including branding, policies, oversight, and profit sharing, renders it liable for the acts and omissions of its agents and employees under the doctrine of vicarious liability and pursuant to federal and state anti-trafficking laws.

348. On information and belief, Plaintiff's trafficking was not an isolated event, and on information and belief, Defendant has previously allowed,

facilitated, or failed to prevent similar incidents on the premises, further demonstrating a pattern of willful blindness or deliberate indifference.

349.    As a direct and proximate result of Defendant's knowing or reckless participation in and benefit from the sex trafficking venture, Plaintiff has suffered and continues to suffer substantial physical, psychological, and emotional harm, including trauma, anxiety, depression, fear, and loss of personal autonomy and other damages determined at trial.

## COUNT XIV
## CAUSE OF ACTION AGAINST DEFENDANT R&M REAL ESTATE COMPANY INC. D/B/A COMFORT INN & EXECUTIVE SUITES
### (Negligence and Premises Liability)

350.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 156-194 of this Complaint as if fully set forth herein.

351.    At all relevant times, Defendant owned, operated, managed, controlled, and/or maintained the premises, where Plaintiff was subjected to repeated acts of sex trafficking, abuse, and commercial sexual exploitation.

352.    Defendant had a duty to implement adequate safety measures to ensure that its premises were not used for criminal purposes, including but not limited to human trafficking, sexual exploitation, use of illicit drugs, and other abuse.

353. Defendant also had a duty to properly train and supervise its employees to recognize and respond to signs of human trafficking, criminal activity, and guests in distress on its property.

354. Plaintiff was an invitee and/or lawful guest on the premises during the time she was trafficked. As such, Defendant owed Plaintiff a duty to exercise reasonable care in maintaining the premises in a safe condition and to protect her from foreseeable harm, including criminal activity such as human trafficking and sexual exploitation.

355. Defendant breached this duty of care by failing to take reasonable and appropriate steps to prevent foreseeable criminal activity on the premises. Such failures include, but are not limited to:

   a. Failing to monitor and investigate suspicious activity consistent with human trafficking on its premises;

   b. Failing to implement and enforce reasonable security measures and anti-trafficking protocols;

   c. Failing to properly train its staff to recognize and respond to red flags of trafficking and criminal conduct;

   d. Failing to provide assistance to Plaintiff when she visibly presented with signs of distress and directly reported being in danger and having been assaulted;

    e. Refusing Plaintiff access to a safe space within the Hotel or to charge her phone in order to contact help; and

    f. Allowing dangerous individuals, including traffickers, to remain on the property unmonitored and unreported.

356. Defendant's acts and omissions constitute negligence and premises liability under the laws of the State of Florida.

357. Defendant knew or should have known that failure to take action in the face of these warning signs would likely result in harm to vulnerable individuals, including Plaintiff.

358. Defendant knew or should have known that the Hotel was being used, or was at risk of being used, for illicit and criminal purposes, including human trafficking and sexual exploitation.

359. Defendant's inaction enabled, facilitated, and prolonged Plaintiff's trafficking and exploitation on the premises.

360. Despite the foreseeability of such harm, Defendant failed to take reasonable steps to prevent the harm suffered by Plaintiff or to provide her with assistance when she reported being in immediate danger.

361. As a direct and proximate result of Defendant's negligence and failure to maintain safe premises, Plaintiff has suffered and continues to suffer physical,

psychological, and emotional harm, including trauma, anxiety, depression, fear, loss of personal autonomy, and other damages determined at trial.

## COUNT XV
## CAUSE OF ACTION AGAINST DEFENDANT R&M REAL ESTATE COMPANY INC. D/B/A COMFORT INN & EXECUTIVE SUITES
### (Intentional Infliction of Emotional Distress)

362. Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-18 & 156-194 of this Complaint as if fully set forth herein.

363. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

364. At all relevant times, Defendant owned, operated, controlled, or otherwise managed the premises where Plaintiff was trafficked, abused, and subjected to repeated acts of commercial sexual exploitation.

365. Defendant had a duty to refrain from engaging in conduct that was extreme, outrageous, and likely to cause severe emotional distress to its guests, including Plaintiff.

366. Defendant knew or should have known that its acts and omissions created a high risk of causing severe emotional distress to Plaintiff, a vulnerable and visibly distressed woman who sought help and safety on its premises.

367. Defendant's conduct, including its knowing allowance or reckless disregard of sex trafficking on its premises, was extreme and outrageous, going beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community.

368. Defendant knew or should have known that its failure to take appropriate action in the face of blatant signs of human trafficking—including repeated short-term stays, cash transactions, physical signs of abuse, and clear indicators of coercion and exploitation—would result in extreme emotional and psychological harm to vulnerable victims, including Plaintiff.

369. Despite actual or constructive knowledge of the criminal activity occurring on its property, Defendant failed to intervene, report, or take action to stop it. Defendant instead allowed its premises to serve as a haven for sex trafficking and exploitation, thereby displaying willful indifference to Plaintiff's suffering and other vulnerable victims.

370. Defendant's conduct was intentional and/or carried out with reckless disregard for Plaintiff's well-being and was certain or substantially certain to cause Plaintiff to suffer severe emotional distress.

371. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe and ongoing emotional distress, including but not limited to post-traumatic stress disorder (PTSD), anxiety,

depression, and other psychological traumatic injuries and other damages determined at trial.

## DAMAGES

372.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs ¶¶ 12-376 of this Complaint as if fully set forth herein.

373.   As a direct, proximate, and foreseeable result of each Defendant's negligence and violations of the Trafficking Victims Protection Reauthorization Act (TVPRA), Plaintiff sustained personal injuries, mental and emotional pain and suffering, mental anguish, and other damages as will be proven at trial.

374.   Plaintiff asserts all claims permissible under Florida law against each Defendant for injuries suffered in connection with the incident at issue, seeking recovery for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general, and punitive damages allowed under Florida and federal law. Specifically, Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and other damages permissible under Florida and federal law, including, but not limited to:

(a) personal injuries;

(b) past, present, and future conscious pain and suffering;

(c) loss of enjoyment of life;

(d) medical expenses;

(e) mental anguish and emotional distress;

(f) loss of past, present, and future wages;

(g) incidental expenses;

(h) all special, compensatory, economic, punitive, and other damages permissible under Florida law; and

(i) consequential damages to be proven at trial.

375. Plaintiff is also entitled to an award of punitive damages without limitation or cap because the actions of each Defendant and its employees, agents, and representatives were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

376. Defendants' actions demonstrate bad faith, have been stubbornly litigious, and have caused Plaintiff undue expense. Accordingly, Plaintiff is entitled to recover all necessary expenses of litigation, including reasonable attorneys' fees and costs incurred in this action, pursuant to Florida law and applicable federal statutes, including 18 U.S.C. § 1595(a). Furthermore, Plaintiff reserves the right to seek all other available attorneys' fees and litigation expenses under Florida statutory and common law, as well as any other applicable federal laws and common laws.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff demands judgment against each Defendant in excess of $75,000.00 and prays that this case be set for trial before a jury and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally for:

 a. all economic damages to which they are entitled;

 b. all actual damages to which they are entitled;

 c. all compensatory damages available for the losses described with respect to each cause of action;

 d. all incidental and consequential and/or special damages;

 e. all mental anguish and emotional distress damages to which they are entitled;

 f. past and future medical expenses, as well as the costs associated with past and future life care;

 g. past and future mental distress;

 h. all restitution damages to which they are entitled;

 i. all disgorgement of profits to which they are entitled;

 j. all unjust enrichment damages to which they are entitled;

 k. all available economic damages, including without limitation, conscious pain and suffering, past, present, and future injuries, physical

injuries, emotional/mental and psychiatric/psychologic injuries, and

loss of enjoyment of life;

l.   exemplary, treble, and/or punitive damages;

m. attorneys' fees and costs of this suit;

n.  punitive damages with respect to each cause of action;

o.  pre-judgment and post-judgment interest at the highest rate allowed by

law; and

p.  all other relief to which they are entitled in law or in equity.

## JURY TRIAL DEMAND

Plaintiff demand a trial by jury on all issues so triable.

Dated: March 13th, 2025

THE LAW OFFICES OF TRAVIS R. WALKER, P.A.

By: __/s/ Travis R. Walker___
Travis R. Walker Esq.
Florida Bar No. 33693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis@traviswalkerlaw.com
service@traviswalkerlaw.com
wasi@traviswalkerlaw.com